961 A.2d 655

Sumesh THOMAS

v.

Thomas P. DORE, et al.

No. 2268, Sept. Term, 2007.

Court of Special Appeals of Maryland.

Dec. 4, 2008.

---

Byron L. Huffman, Columbia, for appellant.

No argument for appellee.

Panel: DAVIS, DEBORAH S. EYLER and CHARLES E. MOYLAN, JR. (retired, specially assigned), JJ.

CHARLES E. MOYLAN, JR. Judge, Retired, Specially Assigned.

Although the general rule is that if the purchaser of a property at a foreclosure sale fails to make timely payment of the purchase price he thereby becomes obligated to pay interest on the unpaid balance, there have evolved at least three recognized exemptions from the strict application of that general rule. The question before us on this appeal is whether a purchaser's possible entitlement to one of those exemptions can be irretrievably contracted away in the very act of making the successful bid on the property.

### The Present Case

The appellant, Sumesh Thomas, on November 29, 2006, purchased the property known as 2350 Sundew Terrace in Baltimore City at a foreclosure sale. The court-appointed substitute trustees who presided over the sale are formally listed as the lead appellees on this appeal. They have not,

however, filed an appellate brief and are not participating in the appeal. The sale was timely reported to the Circuit Court for Baltimore City by the trustees on December 7, 2006. Maryland Rule of Procedure 14–305(a). A Notice of Report of Sale was duly issued by the clerk of the court, indicating that unless good cause to the contrary were shown by January 7, 2007, the sale of the property would be ratified by the court. Rule 14–305(c).

### Ratification and Settlement

It has been recognized for well over a century and a half that the date when a contract of sale in a foreclosure proceeding becomes effective is the date when the court officially ratifies the sale. It is then or at some designated time shortly thereafter that the payment by the purchaser of any remaining unpaid purchase price becomes due. As the Court of Appeals stated in *Wagner v. Cohen,* 6 Gill 97, 102–03 (1847):

> It is certainly true that *a contract of sale* made *between the Court as the vendor* of the property, through the agency of a trustee, *and the purchaser, is never regarded as consummated until it has received the sanction and ratification of the Court.*

(Emphasis supplied).

Updating *Wagner v. Cohen* by 109 years, *Talbert v. Seek,* 210 Md. 34, 43, 122 A.2d 469 (1956), similarly provided:

> In all sales made under the authority of a decree of a court of equity, the court is the vendor, acting for and in behalf of all parties interested. *The contract of sale is a transaction between the court as vendor, and the purchaser,* and the contract is never regarded as consummated until it has received the sanction of the court. *Before ratification the transaction is merely an offer to purchase which has not been accepted.*

(Emphasis supplied). See also *McCann v. McGinnis,* 257 Md. 499, 505, 263 A.2d 536 (1970) ("The court is the vendor in the case of a sale under the power contained in a mortgage."); *Waters v. Prettyman,* 165 Md. 70, 75, 166 A. 431 (1933) ("Upon the sale being reported to the court, it assumes jurisdiction

and permits those interested in the sale or the proceeds thereof to file objections to its ratification."); *Hanover Fire Insurance Co. v. Alexander Brown & Sons,* 77 Md. 64, 71, 25 A. 989 (1893) ("Before ratification the transaction is merely an offer to purchase which has not been accepted."); *White v. Simard,* 152 Md.App. 229, 240–43, 831 A.2d 517 (2003) ("Until the sale by the trustee is ratified by the court, it stands as merely an executory contract."); *Four Star Enters. Ltd. P'ship v. Council of Unit Owners of Carousel Ctr. Condo., Inc.,* 132 Md.App. 551, 563–64, 752 A.2d 1272 (2000) ("It has long been the rule in Maryland that foreclosure sales are not final prior to court approval.").

In the ordinary course of events, ratification in this case would have been expected to occur on January 8, 2007, and the appellant would have been required to go to settlement within 20 days thereafter and at that settlement to have paid to the trustees the $71,000 remaining due on the purchase price, a deposit of $5,000 having already been paid. For reasons to be discussed, the ratification did not take place on January 8, 2007, but was delayed until March 23, 2007. The ultimate settlement was thereby pushed back to April 12, 2007.

The reason for the delay in ratification was that on December 19, 2006, Bannister Lee Raines, Jr., the former owner and mortgagor of the property, filed exceptions to the foreclosure sale. Rule 14–305(d)(1). The trustees filed a Response on January 2, 2007, arguing that the exceptions showed no grounds for setting aside the foreclosure. A hearing was held in the circuit court on the exceptions on March 23, 2007. The exceptions were overruled and the sale of the property was ratified on that date. Rule 14–305(d)(2).

### Motion For Abatement of Late Charges

The appellant subsequently filed a Motion for Equitable Abatement of Purchase Price. The appellant has not informed us of the precise date on which that motion was filed. All we have is a Certificate of Service indicating that copies of the motion were mailed to the appellees and to the former owner of the property on April 17, 2007. The motion sought an equitable abatement of late charges imposed on the appel-

lant between January 8, 2007 and March 23, 2007, the day the sale was finally ratified. No issue was raised in the circuit court with respect to the timeliness of the filing of the motion, however, and that is not an issue before us.

In addition to seeking an abatement of interest due on the remainder of the purchase price, the motion also sought to include an abatement of a variety of other late charges, such as escrow advances, corporate advances for prior legal fees, property taxes, and condominium assessments. The ultimate disposition of the motion, however, dealt exclusively with the issue of the abatement of interest payments on the unpaid balance of the purchase price, and our analysis will be confined to that single issue. The appellant's motion stated his basic argument.

5. The Purchaser had been ready to settle on the property upon ratification of the sale, which should have occurred on or about January 7, 2007.

6. *The Purchaser, through no fault of his own, was substantially delayed in completing the purchase of the property because of the delays* of this Court in ratifying the sale *caused by the Defendant. The Defendant should not profit by a delay which was caused by him. Interest* on the bid price and taxes *should be abated from the anticipated ratification date to the actual date of ratification.*

7. *When the purchaser at a judicial sale is prevented from settling with the Substitute Trustees through no fault of his own, the Court may equitably abate the interest on the unpaid balance of the purchase price* and taxes *when such delay in settlement is caused by the conduct of other persons beyond the power of the purchaser to control or ameliorate,* such as the delays in this case occasioned by the exceptions filed by the Defendant.

(Emphasis supplied).

### The Development of the General Rule And the Exceptions Thereto

It is appropriate at this point to turn to the Maryland caselaw concerning the possible abatement of interest pay-

ments occasioned by a delay in settlement following a foreclosure sale. As early as 1830, *Brown v. Wallace*, 2 Bland 585, 594, first stated the general rule as one "of ancient lineage" in the courts of chancery:

> "*It is a general rule* as to sales under decrees of this Court, *that the purchaser always pays interest according to the terms of the decree, from the day of sale,* whether he gets possession or not. *His getting possession is, in no case, allowed to be a condition precedent to the payment of either principal or interest of the purchase money.*"

(Emphasis supplied).

*Latrobe and Whistler v. Winans*, 89 Md. 636, 655, 43 A. 829 (1899), made it clear that the purchaser of a property is obliged to pay interest during any period of delay in settlement *if the purchaser was the party responsible for the delay.* The obligation to pay interest was thus treated as a contingent one.

> "*If the delay in completing the contract be attributable to the purchaser, he will be obliged to pay interest* on the purchase money from the time the contract ought to have been carried into effect...."

(Emphasis supplied).

In *Leviness v. Consolidated Gas Company*, 114 Md. 559, 80 A. 304 (1911), a scheduled settlement was delayed by the necessity of obtaining a judicial decision as to whether there was a good and marketable title to the property. The purchaser argued that, the general rule notwithstanding, he should not be charged with interest on the unpaid purchase price until the judicial decision made it clear that the title was good. The Court of Appeals accordingly exempted the purchaser from the obligation to pay interest, saying at 114 Md. at 573:

> The sale here involved was made on April 13, 1910, and $5,000.00 of the purchase money was paid at that time. It was agreed that the balance of the price should be paid two months later upon the conveyance of a "good and merchantable title to the vendee in fee simple." The decree below required the purchaser to pay the $45,000.00 balance of the

purchase money ... but interest was allowed the plaintiff only from the date of the decree.... *The appellants urge that as these proceedings were necessary to make the title good and marketable, ... they request that the ... interest be adjusted* as of the date of the decree in this Court. *In our judgment, it is equitable,* under the circumstances of the case *that the dispositions thus proposed as to interest ... should be adopted,* and we will decree accordingly.

(Emphasis supplied).

*Oldenburg v. Regester,* 118 Md. 394, 85 A. 411 (1912), reiterated that the general rule imposing the payment of interest on the purchaser must not be applied in an inflexible manner. The day fixed for final ratification in that case was May 8, 1910. Ratification was delayed, however, until October of 1910. The purchasers moved that their payment of interest be excused because the delay had not been caused by them. The trustees insisted upon the payment of interest and the trial court ruled in favor of the trustees. The Court of Appeals reversed the trial court, holding that the equities compelled a departure from the general rule. The Court held, 118 Md. at 398, 85 A. 411:

The appellees rely upon the general rule as stated in *Wagner v. Cohen,* 6 Gill. 97; *Brown v. Wallace,* 2 Bl. 587; *Same Case,* 4 G. & J. 479; and *Latrobe v. Winans,* 89 Md. [at] 655, that the purchaser is ordinarily liable for interest from the time the sale is to be effective. The cases cited were concerned with conditions altogether different from the present, and *the rule invoked is not one of absolute and unvarying application.* In a very recent case *this Court has manifested its disposition to be governed by equitable considerations in dealing with such questions. Leviness v. Consol. Gas. Co.,* 114 Md. [at] 573[, 80 A. 304].

In the case before us *the equities require that the trust estate rather than the purchasers should bear the charges in dispute.*

(Emphasis supplied).

In *Raith v. New Baltimore Building and Loan Association,* 140 Md. 542, 118 A. 67 (1922), there was an intervening law

suit filed by a party other than the purchaser that caused a 16–month delay in the settlement date. Because the party taking the appeal that caused the delay had not posted an appeal bond, however, the purchaser could have freely disregarded the suit and proceeded to settlement with legal impunity. The purchaser did not enjoy, therefore, the benefit of such equitable consideration as would excuse his obligation to pay interest.

> It has thus been over sixteen months since the sales were ratified, and Raith *could have had possession of the properties and have been protected,* as shown by the authorities cited above, *if he had complied with the terms of sale at that time.* It is therefore a wholly different case from that of *Oldenburg v. Regester,* 118 Md. 394, 85 A. 411, cited by the appellant, and *no such equitable considerations as therein existed are to be found in this case.*

140 Md. at 546, 118 A. 67 (emphasis supplied). See also *Merryman v. Bremmer,* 250 Md. 1, 10, 241 A.2d 558 (1968) (The purchaser was exempted from the obligation to pay interest because the "delay ... must be attributed to the trustee ... and not to [the purchaser].").

### The View From the Mountaintop

The landmark opinion of Judge Menchine (retired, specially assigned) for the Court of Appeals in *Donald v. Chaney,* 302 Md. 465, 488 A.2d 971 (1985), painstakingly surveyed 155 years of Maryland legal history on the subject and synthesized into a compact statement both the general rule and its three traditionally recognized exceptions. In *Donald v. Chaney* itself, the obligation on the purchaser to pay interest between the date fixed for settlement and the delayed settlement date was not forgiven because the reason for the delay was the purchaser's own failure to obtain financing.

> In ordinary circumstances and in the absence of special provisions in the sale offer, *a delay caused by difficulty in obtaining financing would not discharge a purchaser from the obligation to pay interest* from the date fixed for settlement by the terms of sale until a delayed settlement.

In this case the sole factor causing the delay in settlement was the inability of the Purchasers to obtain financing for the payment of the balance of the purchase price within the time fixed for settlement under the terms of sale stated in the advertisement.

*It plainly is the duty of a purchaser at a judicial sale to assure the court that he is ready, willing and able to comply with the terms fixed for its completion.* We find in this record no equitable considerations justifying relief to the Purchasers from the obligation to pay interest on the unpaid balance for the period of delay in settlement.

302 Md. at 477–78, 488 A.2d 971 (emphasis supplied).

The special value of the *Donald v. Chaney* opinion, however, inheres in its succinct bringing together of both the general obligation and its three recognized exceptions. With that synthesis, this tight little corner of the law is now shipshape and Bristol fashion.

Our examination of the cited cases decided by our predecessors persuades us that *a purchaser at a judicial sale will be excused from requirement to pay interest upon the unpaid balance* for the period between the time fixed for settlement and the date of actual settlement *only when the delay* [1] stems from neglect on the part of the trustee (*Oldenburg v. Regester; Merryman v. Bremmer,* both *supra* ); [2] was caused by necessary appellate review of lower court determinations (*Leviness v. Consol. Gas Co.,* 114 Md. [at] 573, 80 A. 304) or [3] *was caused by the conduct of other persons beyond the power of the purchase to control or ameliorate (Raith v. Bldg. & Loan Ass'n, supra).*

*Id.* at 477, 488 A.2d 971 (emphasis supplied).

### Trustees' Response to the Motion

The response of the trustees to the appellant's motion for an abatement of interest charges asserted two lines of opposition. In one of those lines of argument, the trustees acknowledged that the delay in settlement had not been the fault of the

appellant but was exclusively the fault of the original owner, Bannister Raines.

3. That with respect to the allegations contained in Paragraph No. 6, they assert that *all delays were occasioned by the acts of [Raines]* and thus, *any abatement should be in the form of an award of any of the surplus proceeds due to [Raines]* and not an abatement of the purchase price which would affect the rights of the first mortgagee who has acted in good faith.

(Emphasis supplied).

Pursuant to that argument, the appellees maintained that any recovery of the interest payment by the appellant should come from Raines, by way of a reduction of the surplus proceeds due to him, and not in the form of an abatement from the money due to the trustees at the time of settlement.

6. That while this Court may be inclined to reduce the surplus proceeds due to the Third Party Purchaser by an amount equal to the additional interest incurred as a result of the delay, *the Third Party Purchaser should be,* in fact, *required to pay those sums to the Substituted Trustees* and seek return of those funds in accordance with the Court Order directing the Court Auditor to return those funds to the Third Party Purchaser.

7. That otherwise, the first mortgagee would assume the risk of the delay occasioned by [Raines] were the Court to order abatement.

8. That it would be inequitable for the first mortgagee to incur the losses occasioned by the actions of [Raines] and that the Third Party Purchaser at all times was aware of the terms of the sale. Furthermore, the Third Party Purchaser must take into consideration the fact that [Raines] could file Exceptions.

9. That *it is only equitable that the amounts sought by the Third Party Purchaser be paid from any surplus*

*proceeds due to [Raines] and not in the form of an abate-*
*ment of the purchase price.*

(Emphasis supplied).

The ultimate disposition of the motion by the circuit court, however, gave no consideration to that alternate form of relief suggested by the appellees.

### The Contractual Provision

The ultimate denial of the appellant's motion by the circuit court adopted the second line of argument of the appellees that the appellant was contractually precluded from receiving an abatement of interest.

4.   That *the contract between the parties requires that the Third Party Purchaser pay interest from the date of sale to the date of settlement* and that in anticipation of the possibility of delays, the Substituted Trustees require as a term of the contract that *interest shall not be abated for any reason.*

5.   That *the Movant* in this case *was aware of the terms* and provisions *of the contract and assented to them by the execution of the contract and acceptance of the terms there- of.*

(Emphasis supplied).

The bare-bones order of the circuit court on November 13, 2007, denied the appellant's motion for the abatement of interest payments on the ground that the appellant was contractually prohibited from receiving the relief he sought.

**ORDERED** that the Motion be, and the same hereby is, **DENIED** on the grounds that *the relief sought by Purchaser is contrary to the terms of the contract of sale between Substitute Trustee and Purchaser.*

(Emphasis supplied).

There was no consideration of the merits of the appellant's position that he was not responsible for any of the delay. There was no consideration of the timing of the motion for the abatement of interest payments.   There was no consideration

of the alternative relief suggested by the appellees that any recovery should be from the original owner. There was simply a flat legal ruling that the contract itself absolutely forbade the abatement of interest.

Two questions, therefore, are posed for our decision. Did the appellant actually enter into a contract that stated that "in the event settlement is delayed for any reason, there shall be no abatement of the interest."? If so, is that provision absolutely binding on him?

### Negotiating a Contract in the Context of a Foreclosure Sale

The appellant did, indeed, so contract. He attended the public auction at which the substitute trustees put 2350 Sundew Terrace on the auction block. The appellant successfully bid on the property. The brief memorandum of sale that he signed contained the following provision above his signature:

> *The undersigned hereby acknowledges* purchase of the property as described on *the attached advertisement at public auction* on this date—Wednesday, November 29, 2006—*and hereby agrees to comply with the terms of sale as described therein* . . . .

(Emphasis supplied).

A copy of that advertisement of the property for sale at auction was attached to the memorandum of sale signed by the appellant. One of the paragraphs in the advertisement was under the heading **TERMS OF THE SALE.** Among those terms was the critical sentence:

> In the event settlement is delayed for any reason, there shall be no abatement of the interest.

A short sentence buried deep in the fine print of a paid newspaper advertisement is, to be sure, not a garden variety way of arriving at a contract provision. It is its context as a foreclosure sale at which bids are solicited and made, however, that gives it its significance. The context is unusual. The machine gun-like pace of an auctioneer responded to by a subtle nod of the head or a raised finger by random bidders

does not permit extended wrangling over a word or protracted negotiation over a phrase. If the legal phenomenon of an auction sale is to enjoy any validity, however, complex contractual significance is of necessity imparted to a subtle nod of the head or a raised finger. That instant infusion of contractual substance into what might appear to be a fleeting gesture depends upon the significance the law attaches to the advertisement or notice of a foreclosure sale in a newspaper of general circulation. Maryland Rule 14–303(b) provides, in pertinent part:

> (b) **Public sale—Advertisement.** Unless otherwise ordered by the court, *a trustee proposing to make a public sale shall give notice by advertisement of the* time, place, and *terms of sale in a newspaper of general circulation* in each county where any portion of the property is located.

(Emphasis supplied).

The terms of sale contained in such an advertisement automatically become a part of the contract that is made when the sale is ratified. Comment e to § 28(2) of the *Restatement (Second) of Contracts* (1981) explains:

> *[B]idders* are or *should be aware of terms . . . published or announced. A bid need not repeat such term[s]; it is understood as embodying them.* Hence *the bidder is held to the published or announced terms* even though he may have neglected to read them or may have arrived at the auction after the announcement was made.

(Emphasis supplied).

In *White v. Simard,* 152 Md.App. 229, 244–47, 831 A.2d 517 (2003), *aff'd,* 383 Md. 257, 859 A.2d 168 (2004), Judge Sally Adkins engaged in a definitive analysis for this Court of the binding contractual impact of the advertisement of sale in the context of court-ordered foreclosure sales. Her opinion laid out the basic law establishing the advertisement as the basis for determining the terms of sale.

> *The contractual offer and acceptance phase of a foreclosure sale is analogous to the offer and acceptance phase of a*

*private auction.* Corbin explains the offer and acceptance process of an auction or other solicited offer:

> Sometimes the expressions of a ... soliciting agent amount to no more than an invitation to submit an offer. The solicitor may be authorized neither to make an offer nor to accept one. In such a case, an order for goods given by the solicited customer is a mere offer, even though it clearly states all the terms and even though it is on a printed form supplied by the solicitor's own principal.

1–4 *Corbin on Contracts* § 2.3 (2003). In this situation, *the terms of the advertisement are incorporated into any bid that is made. See Restatement (Second) of Contracts ("Restatement")* § 28(2) (1981) ("Unless a contrary intention is manifested, *bids at an auction embody terms made known by advertisement,* posting or other publication of which bidders are or should be aware, as modified by any announcement made by the auctioneer when the goods are put up").

152 Md.App. at 244–45, 831 A.2d 517 (emphasis supplied).

The opinion explained, *id.* at 245, 831 A.2d 517, that even though an advertisement of sale is not itself a contract, *such an advertisement does set forth the terms that later will be embodied in the contract* of sale *upon acceptance of a bid by the trustee* (forming an executory contract), contingent upon ratification of that contract of sale by the court. In effect, *by choosing to bid on the property* at the public sale, *a bidder "offers" to purchase the property under the express terms advertised by the trustee.*

(Emphasis supplied).

The brief Memorandum of Purchase signed by the purchaser, Simard, in that case was essentially indistinguishable from the memorandum signed by the appellant in this case. Our opinion held that the memorandum there incorporated the terms of sale spelled out in the advertisement of sale.

> After making the highest bid at both the initial and subsequent public auctions, *Simard signed a "Memorandum Of Purchase At Public Auction." This memorandum explicit-*

*ly secured Simard's agreement to the terms of sale outlined in the advertisement of sale.* It served, in essence, as the contract of sale, which became fully effective upon the court's subsequent ratification of the sale.

*Id.* at 245–46, 831 A.2d 517 (emphasis supplied).

Our holding in *White v. Simard,* 152 Md.App. at 246–47, 831 A.2d 517, was clear:

Because *the now contested term of sale was properly advertised in the notice of sale,* we assume that *Simard had at least constructive knowledge of that term when he bid on the property. He expressly reaffirmed his agreement to abide by that term of sale when he signed the Memorandum of Purchase.* Thus, we hold that Simard was "cognizant of all the essential facts necessary to enable him to understand what the trustee [was] selling" when he bid on the property.

(Emphasis supplied).

It was, therefore, established that the appellant contractually agreed that if the ratification of the sale were to be delayed for any reason, there could be no abatement of the payment of interest by the purchaser. That contractual provision was presumptively binding. The key word in that statement, however, is the adverb "presumptively." Is that presumption that the contractual provision is binding one that may be rebutted?

### Equitable Considerations May Trump a Contract

Is there no balm in Gilead? Actually there is, and it is to be found in the opinion of Judge Harrell for the Court of Appeals in *Baltrotsky v. Kugler,* 395 Md. 468, 477–81, 910 A.2d 1089 (2006). In that case, as in this, the ratification of the foreclosure sale was delayed (in that case for 11 months). In that case, as in this, the exclusive reason for the delay was that the former owner of the property filed exceptions to the foreclosure. The trial judge in that case abated the obligation of the purchaser to pay any interest on the unpaid purchase price during the period of delay. In an unreported opinion, the Court of Special Appeals affirmed that abatement. The Court

of Appeals then affirmed the decision of this Court in that regard.

Judge Harrell's opinion reaffirmed the statement of the law in *Donald v. Chaney*, 302 Md. at 477, 488 A.2d 971, that the general rule is that the purchaser will be charged interest during any period of delay but that there are three recognized exceptions to that general rule. The third of those exceptions, the one pertinent in that case and in this, is the circumstance that the delay "was caused by the conduct of other persons beyond the power of the purchaser to control or ameliorate." In the *Baltrotsky* case itself, the Court of Appeals found that the delay in the ultimate settlement caused by the former owner placed the case squarely within that third exception to the general rule.

> [The former owner's] tenacious [efforts] to void the foreclosure sale and delay settlement places the present case squarely within the third equitable circumstance delineated in *Donald*, "conduct of other persons beyond the power of the purchaser to control or ameliorate." The court filings catalogued previously illustrate the conclusion that the foreclosure purchasers were confronted with a significant amount of litigation maneuvers, albeit ultimately unavailing, which clouded their respective titles during their pendency. *Settlement was delayed understandably.*

395 Md. at 479, 910 A.2d 1089 (emphasis supplied).

At that point, however, the former owner in that case chose to play the contract card, just as it was played by the trustees in this case and was relied on by the judge who denied the appellant's motion. The argument there, as here, was that abatement was forbidden by the terms of the contract.

> *Petitioner points to the language in the published notice of the foreclosure sale* placing the burden of paying interest on the purchasers *as forbidding the Circuit Court's abatement of interest.* Petitioner proffers the Court of Special Appeals's opinion in *White v. Simard* as support for this argument. Specifically, we are directed to a quotation from the Court of Special Appeals's opinion in *White* for the

proposition that the terms of sale found in an advertisement of a foreclosure sale are binding on the parties to that sale.

*Id.* at 479–80, 910 A.2d 1089 (emphasis supplied).

The trustees in this case, in their written submissions to the judge deciding the motion, attempted to distinguish this case from *Baltrotsky* by pointing out that the contractual prohibition on the abatement of interest there was only implicit, whereas the prohibition in this case was explicit. It is a distinction without a difference, because the Court of Appeals in *Baltrotsky* treated the prohibition there as an actual contractual prohibition that was presumptively binding. The sanctity of contract was not treated lightly.

> It is beyond cavil that, *generally speaking, the express terms of a contract bind the parties and courts should not meddle in the affairs of the parties by modifying terms of the agreement* to assist a disadvantaged party. *Walther v. Sovereign Bank,* 386 Md. 412, 429–30, 872 A.2d 735, 746 (2005) ("[O]ne of the most commonsensical principles of all of contract law [is] that a party that voluntarily signs a contract agrees to be bound by the terms of that contract."); *Calomiris v. Woods,* 353 Md. 425, 445, 727 A.2d 358, 368 (1999) ("Contracts play a critical role in allocating the risks and benefits of our economy, and *courts generally should not disturb an unambiguous allocation of those risks* in order to avoid adverse consequences for one party."); *Post v. Bregman,* 349 Md. 142, 169, 707 A.2d 806, 819 (1998) (" 'Parties have the right to make their contracts in what form they please, provided they consist [sic] with the law of the land; and it is the duty of the Courts so to construe them, if possible, as to maintain them in their integrity and entirety.' ").

395 Md. at 480, 910 A.2d 1089 (emphasis supplied).

The Court of Appeals, however, then recognized that sometimes an exceptional circumstance, such as "some countervailing public policy," may nonetheless cause the Court "to modify or excise certain terms of a contract."

> *That general rule is tempered,* however, *by the caveat that* "fraud, duress, mistake, or *some countervailing public policy" may serve as occasions to modify or excise certain terms of a contract. Calomiris,* 353 Md. at 445, 727 A.2d at 368; *see also Md.-Nat'l Capital Park & Planning Comm'n v. Washington Nat'l Arena,* 282 Md. 588, 605–07, 386 A.2d 1216, 1228–29 (1978); 5 Williston on Contracts § 12:3 (4th ed.1993); Restatement (Second) of Contracts §§ 178, 184(1) (1981); *cf. Holloway v. Faw, Casson & Co.,* 78 Md.App. 205, 230–39, 552 A.2d 1311, 1324–28 (1989), *aff'd in part, rev'd in part,* 319 Md. 324, 572 A.2d 510 (1990) (describing the *"blue pencil" doctrine of contract law by which offensive terms are removed).*

*Id.* at 480, 910 A.2d 1089 (emphasis supplied).

Applying that ameliorating principle to the circumstances then before the Court of Appeals, which are indistinguishable from the circumstances before us in this case, Judge Harrell's opinion concluded its analysis of this issue.

> The present case presents an occasion where public policy, in this case, *the exercise of discretion pursuant to the equitable principles articulated in Donald, counsels that the provision allocating the payment of interest to the purchaser was set aside properly. Petitioner's persistent* and monotonous *pleadings,* advancing arguments rejected previously by the Circuit Court, served only to delay settlement on the properties and *constituted "conduct of other persons beyond the power of the purchaser to control or ameliorate."*

*Id.* at 480–81, 910 A.2d 1089 (emphasis supplied). The presumption is rebuttable. The contractual provision may be "trumped."

## Conclusion

Whether to abate the payment of interest by a purchaser in circumstances such as these is a decision entrusted to the discretion of the hearing judge. *Id.* at 480–81, 910 A.2d 1089. In this case, no discretion on the merits of an abatement was

ever exercised. The judge did not hold a hearing. The judge did not consider the circumstances of the delay or the merits of the request. The judge simply ruled, as a matter of law, that the terms of the contract precluded abatement under any circumstances. It is the clear teaching of *Baltrotsky v. Kugler,* however, that that is not the law.

The case, therefore, must be remanded to the circuit court for its consideration of the appellant's motion on its merits. At a hearing on remand, other questions may arise as well, such as, perhaps, the timelines of the appellant's motion; whether relief at this point, if merited, should be sought from the trustees or from the surplus proceeds arguably already paid to the original owner; and whether the law covering the abatement of interest payments also covers, by analogy, the other forms of relief sought by the appellant. We intimate nothing with respect to these questions which the circuit court has not had the opportunity to consider and to decide.

**JUDGMENT REVERSED; CASE REMANDED TO THE CIRCUIT COURT FOR BALTIMORE CITY FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION; COSTS TO BE PAID BY APPELLEES.**