12 A.3d 698

**John ZORZIT**

v.

**915 W. 36TH STREET, LLC, et al.**

**No. 978, Sept. Term, 2009.**

Court of Special Appeals of Maryland.

Feb. 2, 2011.

Arnold M. Zerwitz, Dundalk, MD, for appellant.

Jan I. Berlage (Gohn, Hankey & Stichel, LLP, on the brief), Baltimore, MD, for appellee.

Panel: WOODWARD, GRAEFF, ARRIE W. DAVIS, (Retired, Specially Assigned), JJ.

WOODWARD, J.

This appeal arises from a decision of the Circuit Court for Baltimore City granting the abatement of interest accruing on the unpaid balance of the purchase price at a foreclosure sale from the date of such sale to the date of settlement. Appellant, John Zorzit, is the court-appointed substitute trustee who presided over the foreclosure sale. Appellees, 915 W. 36th Street, LLC and 919 W. 36th Street, LLC,[1] are the purchasers of the foreclosure properties.

Appellant presents one question for our review, which we have slightly rephrased: Did the circuit court abuse its discretion in abating the interest incurred by appellees from the date of the foreclosure sale to the date of settlement? For the reasons set forth herein, we shall affirm in part and reverse in part and remand the case for further proceedings.

## BACKGROUND

Kalliopi LeVanis and George LeVanis ("former owners") owned three properties located in Baltimore City at 915, 917, and 919 West 36th Street. Each property was subject to a separate deed of trust in favor of the lender, Nick's Amusements, Inc. Upon the former owners' default, appellant, the substitute trustee on the three deeds of trust, petitioned the Circuit Court for Baltimore City for a decree for sale of the properties. Pursuant to the circuit court's Decree for Sale of

---

1. Although MGS Consulting, LLC was the original purchaser of the properties, 915 W. 36th Street, LLC and 919 W. 36th Street, LLC were later substituted as the substitute purchasers by order of the circuit court dated August 21, 2008.

Property dated February 14, 2008, appellant advertised the properties for sale at public auction. *See* Md. Rule 14–210(a). The "Terms of Sale" portion of the advertisement stated, in relevant part:

> Interest to be paid on the unpaid purchase money at the rate of 10% per annum from the date of sale to the date funds are received in the office of the Substitute Trustee. In the event settlement is delayed for any reason, there shall be no abatement of interest.

On June 30, 2008, appellees purchased the properties at the foreclosure sale for $1,200,000. The terms of sale in the advertisement stipulated that a deposit of $50,000 was required at the time of sale and that "[t]he deposit must be increased to 10% of the purchase price within 3 business days." In accordance with those terms, appellees made a total deposit of $120,000, of which $50,000 was paid at the time of the foreclosure sale. The remaining balance of $1,080,000 was due at settlement. After appellant filed a report of sale, the clerk of the circuit court issued a notice of sale on July 16, 2008, indicating that unless good cause to the contrary was shown by August 15, 2008, the court would ratify the sale of the properties. *See* Rule 14–305(e).

On August 15, 2008, the former owners filed exceptions to the foreclosure sale. *See* Rule 14–305(d)(1). Appellant filed an opposition to the exceptions on August 25, 2008, arguing that the exceptions showed no grounds for setting aside the foreclosure.[2] On October 31, 2008, the circuit court denied the former owners' exceptions and issued an order ratifying the sale of the properties. *See* Rule 14–305(d)(2). The settlement on the sale of the properties occurred on December 8, 2008. The settlement statement, which was signed by both appellant and appellees, indicated that appellees paid $47,584.71 in interest at the closing.

---

2. On October 14, 2008, appellees filed a motion to intervene in the litigation, which was granted by the circuit court by order dated December 31, 2008.

On January 5, 2009, appellees filed a motion for abatement of interest in the circuit court. The motion sought an equitable abatement of the interest in the amount of $47,584.71. Appellees' motion stated their basic argument:

13. As recently as this month, the Maryland Court of Special Appeals reiterated this Court's authority to abate interest attributable to a delay in a foreclosure action beyond the purchaser's control.

\* \* \*

17. [T]he right to petition this Court for abatement of interest is so fundamental that it cannot be abdicated by contract.

18. The ratification of the 36th Street Property foreclosure sale was significantly delayed because of the exceptions filed by the Previous Owners.

19. [Appellees] had no control over the filing or litigation of the Previous Owners' exceptions, but [were] held hostage by the process for months.

20. In contrast, [appellant] was completely responsible for the sale of the 36th Street Property and actively involved in litigating these exceptions to that sale.

(Citations omitted).

Appellant filed an opposition to appellees' request for an abatement of interest. In that opposition, appellant asserted that the former owners' exceptions to the foreclosure sale were the sole cause of any delay in settlement. Appellant also noted that appellees agreed to the terms of sale set forth in the published advertisement when they signed the auctioneer's memorandum of purchase. Among those terms was the following sentence: "In the event settlement is delayed for any reason, there shall be no abatement of interest."

A hearing was held in the circuit court on June 8, 2009. At the conclusion of the hearing, the court ruled in favor of appellees and abated the entire interest imposed on appellees, in the amount of $47,584.71. The court explained:

[I]t is very, very, very clear from [Judge Moylan's] opinion [in *Thomas v. Dore*, 183 Md.App. 388, 961 A.2d 655 (2008) ] and the caselaw that he cited within his opinion . . . that the equity does trump a notice of sale, first of all. What's in the full notice means nothing, really.

It's a rebuttable presumption that the person knew there would be no abatement of interest, and that presumption can clearly be rebutted, and he lists the three exceptions. And the exception I believe we're dealing with in this case is clearly that the delay was caused by the conduct of other persons beyond the power of the purchaser to control or ameliorate. . . . [T]he question is not whether the Substitute Trustee did anything wrong, so let's be clear about that. . . . But clearly, anybody outside the purchaser's control that causes a delay is something the Court needs to look at. And in this case it's very clear after everything has been argued that the debtor, from what I can see, caused the delay by filing the exceptions, which have been denied. . . .

The purchaser has no control over this debtor, and I believe that this case fits within the arguments established and the caselaw established in *Thomas v. Dore.*

After the court made its ruling, appellant's counsel continued to argue that appellant was entitled to the payment of interest from the date of the foreclosure sale, June 30, 2008, to September 15, 2008.[3] The hearing judge rejected this argument, stating that nothing in the record enabled her to compute the amount of interest that accrued during that time period.

This timely appeal followed.

### STANDARD OF REVIEW

■ "Whether to abate the payment of interest by a [foreclosure sale] purchaser . . . is a decision entrusted to the

---

**3.** It is unclear from appellant's argument during the circuit court hearing what significance, if any, the date of September 15, 2008 has in this matter. Neither appellant's opposition to the abatement of interest filed in the circuit court nor appellant's brief filed with this Court mention the date of September 15, 2008.

discretion of the hearing judge." *Thomas v. Dore,* 183 Md. App. 388, 405, 961 A.2d 655 (2008). We therefore review a circuit court's decision to abate interest under the "familiar abuse of discretion standard." *Baltrotsky v. Kugler,* 395 Md. 468, 477 n. 7, 910 A.2d 1089 (2006).

This Court has aptly noted that "a ruling reviewed under an abuse of discretion standard will not be reversed simply because the appellate court would not have made the same ruling." *North v. North,* 102 Md.App. 1, 14, 648 A.2d 1025 (1994). Rather, an abuse of discretion might occur when the trial court's decision "either does not logically follow from the findings upon which it supposedly rests or has no reasonable relationship to its announced objective." *Id.*

## DISCUSSION

On appeal, appellant contends that the circuit court "erred" by abating the entire interest due at settlement. Appellant first argues that appellees were obligated to pay the interest on the unpaid balance of the purchase price accruing from June 30, 2008, the date of the foreclosure sale, to August 15, 2008, the initial date prescribed for final ratification, and from October 31, 2008, the date of final ratification, to December 8, 2008, the date of settlement. Specifically, appellant asserts that appellees advance "no argument but that the Appellee [sic] was obligated to pay interest for the first 45 [sic] days (between June 30 and August 15, 2008)." For the period from the actual ratification date of October 31, 2008 to the date of settlement, December 8, 2008, appellant contends that "there is no basis under the principles of equity for awarding Appellee[s] what amounts to a windfall for interest abatement for those 38 days."

Appellant further asserts that the circuit court's decision to abate the interest accruing from August 15, 2008 to October 31, 2008 also constituted an abuse of discretion, because the trial judge failed to exercise any discretion in granting the abatement of such interest. Appellant maintains that

[a] judge exercising discretion could have readily concluded that two and one-half months delay was simply a reasonable foreseeable cost of making a purchase stemming from a foreclosure sale or that given the short period of time the Court might have considered Appellee's [sic] suggestion [at the circuit court hearing] that the interest and costs from August 15 to October 31, 2008 should be divided.

Appellees counter that the circuit court properly abated all of the accrued interest. According to appellees, this Court's opinion in *Thomas* and the Court of Appeals' opinion in *Baltrotsky* are dispositive of the case *sub judice*. In particular, appellees note that in both *Thomas* and *Baltrotsky,* as in the present case, the ratification of the foreclosure sale was delayed because the previous owners filed exceptions. Appellees thus claim that the equitable principles supporting the abatement of interest that were present in *Thomas* and *Baltrotsky* apply to the circumstances of the instant case. Additionally, appellees assert that the circuit court did not abuse its discretion by abating the interest that accrued from June 30, 2008 to December 8, 2008, because the circuit court had no means of computing the interest for any lesser period of time.

Before addressing the parties' contentions, it will be useful to review the rules governing foreclosure actions, as well as the Maryland case law concerning the abatement of interest when settlement on a foreclosure sale is delayed. Title 14 of the Maryland Rules of Procedure, entitled "Sales of Property," sets forth the practice and procedure for foreclosures.[4] Rule 14–202(a) authorizes the beneficiary of a deed of trust or any successor trustee, under power of sale or assent to a decree, to institute a foreclosure action upon default. Like the instant case, "[a]n action to foreclose a lien pursuant to an assent to a decree ... shall be commenced by filing a com-

---

4. The Maryland rules governing foreclosures were substantially amended, effective May 1, 2009. The new rules, however, were not applicable to the case *sub judice* because the foreclosure sale and settlement took place prior to May 1, 2009. We therefore set forth the 2008 version of the Maryland Rules.

plaint to foreclose." [5]   Rule 14–204(a).   Before making a sale of the property subject to the lien, the trustee must "publish notice of the time, place, and terms of sale in a newspaper of general circulation in the county in which the action is pending."   Rule 14–206(b)(1).   For the sale of an interest in real property, the notice must be printed in the newspaper at least once a week for three successive weeks.   *Id.* The trustee or a court-appointed substitute trustee thereafter conducts the foreclosure sale.   Rule 14–207(b)(2).

The court becomes involved in a foreclosure action after the sale is completed.   Rule 14–305(a) [6] states: "As soon as practicable, but not more than 30 days after a sale, the person authorized to make the sale shall file with the court a complete report of the sale and an affidavit of the fairness of the sale and the truth of the report."   Once the report of sale is filed with the court, the clerk issues a notice containing "a brief description sufficient to identify the property and stating that the sale will be ratified unless cause to the contrary is shown within 30 days after the date of the notice."   Rule 14–305(c). Within this 30–day period, a party may file exceptions to the sale.   Rule 14–305(d)(1).   If exceptions are filed, the court determines whether a hearing is necessary, but "it may not set aside a sale without a hearing," and must hold a hearing if "a hearing is requested and the exceptions ... clearly show a need to take evidence."   Rule 14–305(d)(2).

A court will ratify the sale if the time for filing exceptions "has expired and exceptions to the report either were not filed or were filed but overruled, and ... the court is satisfied that the sale was fairly and properly made."   Rule 14–305(e). After the court issues a final order of ratification, settlement takes place with the foreclosure purchaser.

---

**5.**   The deed of trust in the instant case provided for assent to a decree. Rule 14–201(b)(1) defines "assent to a decree" as "a provision in a lien instrument declaring an assent to the entry of an order for the sale of the property subject to the lien upon a specified default."

**6.**   Rule 14–305 was not changed by the 2009 amendments to the foreclosure rules.

In *Donald v. Chaney,* 302 Md. 465, 488 A.2d 971 (1985), the Court of Appeals was called upon to determine whether purchasers at a foreclosure sale on a real estate mortgage were required to pay interest on the unpaid balance of the purchase price from the date fixed for settlement to the actual date of settlement. *Id.* at 468, 488 A.2d 971. The Court summarized the facts relating to the foreclosure sale as follows:

> Advertising of the mortgage sale advised that the property would be sold on November 8, 1982 to the highest bidder; that a deposit of $50,000 would be required at the time and place of sale, and that **the unpaid balance must be paid within 10 days after ratification of the sale by the Court. The ad was silent as to payment of interest upon the unpaid balance.** The Purchasers were the high bidder at sale at $1,150,000 and the required deposit of $50,000 was made. The sale was ratified by the [circuit court] on December 17, 1982. **Settlement did not occur within 10 days from that date, being delayed for a number of months thereafter.**

*Id.* at 473, 488 A.2d 971 (emphasis added).

Settlement did not occur by December 27, 1982, the date fixed for the same by the sale advertisement, because the purchasers were unable to obtain financing for the unpaid balance of the purchase price. *Id.* at 473, 478, 488 A.2d 971. Creditors thereupon filed a petition to require the purchasers to pay interest on the unpaid balance of the purchase price for the period of delay, *i.e.,* from December 27, 1982 to the actual date of settlement.[7] *Id.* at 468, 472, 488 A.2d 971. The trial court denied the creditors' requested relief. *Id.* at 468, 478, 488 A.2d 971.

Upon its review of the case, the Court of Appeals established the following principle:

---

7. The Court of Appeals noted that the precise date of settlement was indeterminable from the record. *Donald v. Chaney,* 302 Md. 465, 472 n. 9, 488 A.2d 971 (1985).

[A] purchaser at a judicial sale will be excused from [the] requirement to pay interest upon the unpaid balance for the period between the time fixed for settlement and the date of actual settlement only when the delay [1] stems from neglect on the part of the trustee; [2] was caused by necessary appellate review of lower court determinations[;] or [3] was caused by the conduct of other persons beyond the power of the purchaser to control or ameliorate.

*Id.* at 477, 488 A.2d 971 (citations omitted). In applying the aforesaid principle to the facts of *Donald,* the Court stated:

The sale was in no way conditioned upon obtention of financing by the Purchasers. In ordinary circumstances and in the absence of special provisions in the sale offer, a delay caused by difficulty in obtaining financing would not discharge a purchaser from the obligation to pay interest from the date fixed for settlement by the terms of sale until a delayed settlement date. In this case the sole factor causing the delay in settlement was the inability of the Purchasers to obtain financing for the payment of the balance of the purchase price within the time fixed for settlement under the terms of sale stated in the advertisement.

*Id.* at 477–78, 488 A.2d 971.

Finding none of the equitable considerations listed above that would justify relieving the purchasers of the obligation to pay interest on the unpaid balance for the period of delay in settlement, the Court held that the trial court's order relieving the purchasers of that obligation was clearly erroneous. *Id.* at 478, 488 A.2d 971.

This Court's opinion in *White v. Simard,* 152 Md.App. 229, 235, 831 A.2d 517 (2003), *aff'd,* 383 Md. 257, 859 A.2d 168 (2004), addressed for the first time "whether parties to a power of sale foreclosure may 'contract out' of the common law rule that the defaulting purchaser is entitled to any surplus proceeds of resale." In *White,* Simard made the winning bid of $53,000 at the foreclosure sale. *Id.* at 237, 831 A.2d 517. Simard, however, failed to timely complete settle-

ment, and the property was resold at Simard's risk. *Id.* Simard again made the winning bid at the resale, this time for $101,141. *Id.* Although he again defaulted, this time Simard assigned his rights to substitute purchasers who successfully completed the sale. *Id.* at 238, 831 A.2d 517. The bid at the second sale created surplus proceeds, and Simard argued that he was entitled to that surplus under Maryland common law. *Id.* at 238–39, 831 A.2d 517. The advertisement of sale, however, expressly provided that "[t]he purchaser shall not be entitled to any surplus proceeds or profits resulting from any resale of the property." *Id.* at 237, 831 A.2d 517 (emphasis omitted).

This Court first observed that the "purchase and sale transaction at any judicial sale is governed by general principles of contract, with the court acting as vendor[.]" *Id.* at 241, 831 A.2d 517. As vendor, the court acts through its agent, the trustee, who

> "reports to the Court the offer of the bidder for the property; if the offer is accepted, the sale is ratified, and thereupon, and not sooner, the contract of sale becomes complete. Before ratification the transaction is merely an offer to purchase which has not been accepted."

*Id.* at 242, 831 A.2d 517 (quoting *Hanover Fire Ins. Co. v. Alexander Brown & Sons,* 77 Md. 64, 71, 25 A. 989 (1893)).

Under Maryland Rule 14–303(b), before property can be sold at public auction, the trustee must publish an advertisement or notice of sale that sets forth "the time, place, and terms of sale." This Court ruled that "[t]hese terms of sale become part of the contract that is made when the sale is ratified." *White,* 152 Md.App. at 244, 831 A.2d 517. We explained:

> Although Simard is correct that an advertisement of sale itself is not a contract, such an advertisement does set forth the terms that later will be embodied in the contract of sale upon acceptance of a bid by the trustee (forming an executory contract), contingent upon ratification of that contract of sale by the court. *See Donald,* 302 Md. at 477 [488 A.2d

971]. **In effect, by choosing to bid on the property at the public sale, a bidder "offers" to purchase the property under the express terms advertised by the trustee.**

*Id.* at 245, 831 A.2d 517 (emphasis added). We therefore held that Simard was not entitled to the surplus proceeds of the resale of the property, because he knowingly bargained away that entitlement.[8]  *Id.* at 236, 247, 831 A.2d 517.

In *Baltrotsky,* the Court of Appeals addressed an issue left unresolved by the confluence of its opinion in *Donald* and our opinion in *White.* In *Donald,* the Court held that the trial court had the discretion to avoid the common law rule requiring a foreclosure sale purchaser to pay interest from the date fixed for settlement to the actual date of settlement if any one of three specific equitable considerations was present. 302 Md. at 477–78, 488 A.2d 971. In *White,* this Court held that the terms of sale found in the advertisement of a foreclosure sale were binding on the parties to the sale, and thus overcame the common law rule that the defaulting purchaser is entitled to any surplus proceeds of a resale. 152 Md.App. at 235, 245, 831 A.2d 517. In *Baltrotsky,* the Court of Appeals was called upon to decide whether the trial court had the discretion under the equitable considerations articulated in *Donald* to set aside a binding term of sale specified in the advertisement of a foreclosure sale. 395 Md. at 480–81, 910 A.2d 1089.

In *Baltrotsky,* the owner of three residential properties, which were subject to a single deed of trust, defaulted on the loan secured by said deed of trust, and the trustee initiated a foreclosure action. *Id.* at 471, 910 A.2d 1089. The foreclosure sale was held on December 24, 2003, and each of the three properties was sold to a third-party purchaser. *Id.* Beginning on December 29, 2003, the owner, proceeding *pro se,* began a litigation effort to avoid the sale and preserve his ownership in

---

8.  After making the highest bid at both public auctions, Simard signed a memorandum that "explicitly secured Simard's agreement to the terms of sale outlined in the advertisement of sale." *White v. Simard,* 152 Md.App. 229, 245–46, 831 A.2d 517 (2003).

the properties. *Id.* Initially, the owner filed a myriad of motions and *lis pendens* actions seeking a stay of the foreclosure proceedings. *Id.* at 471–72, 910 A.2d 1089. The circuit court denied the owner's request to stay the foreclosure and ratified the sale on June 14, 2004. *Id.* at 472, 910 A.2d 1089. Thereafter, the owner persisted in his attempts to forestall the loss of his properties, including an appeal of the sale's ratification to this Court, but his efforts succeeded only in delaying final settlement for approximately one year. *Id.* at 472, 476, 910 A.2d 1089.

Because of the delay occasioned by the owner's protracted litigation, the trial court granted the foreclosure purchasers' motions for abatement of interest on the purchase prices from the date of sale (December 24, 2003) to the date of settlement. *Id.* at 473, 910 A.2d 1089. Settlement on two of the properties took place on October 16, 2004, and on the third property on February 14, 2005. *Id.* This Court affirmed the abatement of interest in an unreported opinion, and the Court of Appeals upheld our decision. *Id.* at 473–74, 910 A.2d 1089.

The Court of Appeals first reaffirmed the common law rule recognized in *Donald:* a foreclosure sale purchaser must pay interest on the unpaid balance of the purchase price until actual settlement of the sale, but there are three equitable exceptions to that general rule. *Id.* at 478, 910 A.2d 1089. The Court then determined that the owner's extensive efforts to void the sale placed the case directly within the third equitable exception, namely, the delay in achieving settlement on the sale was caused by the "conduct of other persons beyond the power of the purchaser to control or ameliorate." *Id.* at 479, 910 A.2d 1089 (quoting *Donald,* 302 Md. at 477, 488 A.2d 971 (quotations omitted)).

Relying on *White,* however, the owner argued that the purchasers were contractually bound by the terms of sale contained in the advertisement, which provided "Interest to be paid on the unpaid purchase money by the purchaser(s) at the rate of 13.5% per annum from the date of sale to the date of settlement." *Id.* at 479–80, 480 n. 9, 910 A.2d 1089 (alterations

in original). The Court responded by recognizing that parties are bound by the express terms of a contract and that courts "should not meddle in the affairs of the parties by modifying terms of the agreement to assist a disadvantaged party." *Id.* at 480, 910 A.2d 1089. That general rule, according to the Court, was, however, subject to the caveat that "some countervailing public policy" may nonetheless justify "modify[ing] or excis[ing] certain terms of a contract." *Id.* at 480, 910 A.2d 1089 (citation and quotations omitted). The Court concluded:

> The present case presents an occasion where public policy, in this case, the exercise of discretion pursuant to the equitable principles articulated in *Donald,* counsels that the provision allocating the payment of interest to the purchaser was set aside properly. [The owner's] persistent and monotonous pleadings, advancing arguments rejected previously by the Circuit Court, served only to delay settlement on the properties and constituted "conduct of other persons beyond the power of the purchaser to control or ameliorate."

*Id.* at 480–81, 910 A.2d 1089.

Finally, in *Thomas,* this Court considered whether the holding of *Baltrotsky* was limited to overriding an implicit contractual term expressed in a foreclosure sale advertisement, as opposed to overriding an explicit term based on the same equitable exception. *See* 183 Md.App. at 404, 961 A.2d 655. In *Thomas,* the purchaser successfully bid on the property at a foreclosure sale on November 29, 2006. *Id.* at 389, 961 A.2d 655. The clerk of the court issued a notice of the report of sale indicating that the circuit court would ratify the foreclosure sale unless good cause was shown by January 7, 2007. *Id.* at 390, 961 A.2d 655. Speaking through Judge Charles Moylan, Jr., we explained the ensuing foreclosure events and resultant delay:

> In the ordinary course of events, ratification in this case would have been expected to occur on January 8, 2007, and the appellant would have been required to go to settlement within 20 days thereafter and at that settlement to have paid to the trustees the $71,000 remaining due on the

purchase price, a deposit of $5,000 having already been paid. For reasons to be discussed, the ratification did not take place on January 8, 2007, but was delayed until March 23, 2007. The ultimate settlement was thereby pushed back to April 12, 2007.

*Id.* at 391, 961 A.2d 655.

Ratification was delayed until March 23, 2007 because, on December 19, 2006, the owner and mortgagor of the property filed exceptions to the sale. *Id.* The trial court overruled the exceptions, and the foreclosure purchaser moved to abate the interest that accrued on the unpaid purchase price between the anticipated ratification date (January 8, 2007) and the actual date of ratification (March 23, 2007). *Id.* at 391–92, 961 A.2d 655.

Notably, the published advertisement of the foreclosure sale was attached to the memorandum of sale signed by the purchaser. *Id.* at 399, 961 A.2d 655. That advertisement contained the following provision: "In the event settlement is delayed for any reason, there shall be no abatement of the interest." *Id.* The circuit court subsequently denied the purchaser's motion on the ground that the purchaser was contractually prohibited from receiving an abatement of interest payments. *Id.* at 398, 961 A.2d 655.

On appeal, Judge Moylan conducted an extensive review of the opinions in *Donald, White,* and *Baltrotsky.* His opinion acknowledged that under *White,* the terms set forth in an advertisement of a foreclosure sale, unless modified by an announcement made at the sale, become the terms of the contract when the sale is ratified by the trial court. *Id.* at 401, 961 A.2d 655. The *Thomas* opinion stated, however, that those contractual provisions are "presumptively binding," noting that "[t]he key word in that statement [ ] is the adverb 'presumptively.' Is that presumption that the contractual provision is binding one that may be rebutted?" *Id.* at 402, 961 A.2d 655. To resolve this question, this Court focused on *Baltrotsky.* *Id.* at 402–05, 961 A.2d 655. We first rejected the argument advanced by the trustees that *Baltrotsky* was

limited to setting aside an implied contractual term. *Id.* at 404, 961 A.2d 655. Judge Moylan's opinion explained:

> The trustees ... attempted to distinguish this case from *Baltrotsky* by pointing out that the contractual prohibition on the abatement of interest there was only implicit, whereas the prohibition in this case was explicit. It is a distinction without a difference, because the **Court of Appeals in** *Baltrotsky* **treated the prohibition there as an actual contractual prohibition that was presumptively binding.**

*Id.* (emphasis added).

This Court then cited to the holding of *Baltrotsky* that " '[t]he present case presents an occasion where public policy, in this case, the exercise of discretion pursuant to the equitable principles articulated in *Donald,* counsels that the provision allocating the payment of interest to the purchaser was set aside properly.' " *Id.* at 405, 961 A.2d 655 (emphasis omitted) (quoting *Baltrotsky,* 395 Md. at 480–81, 910 A.2d 1089). From that holding, the opinion concluded, in Judge Moylan's characteristic style: "The presumption is rebuttable. The contractual provision may be 'trumped.' " *Id.*

When applying the principles articulated in the aforementioned cases to the case *sub judice,* we note preliminarily that no issue was raised in *Donald, Baltrotsky,* or *Thomas* regarding the time period after the foreclosure sale to which the abatement of interest would apply. Indeed, the time period for which abatement of interest was claimed was *different* in each case, *i.e.,* in *Donald,* it was from the date initially set for settlement to the actual date of settlement; in *Baltrotsky,* it was from the date of the foreclosure sale to the date of settlement; and in *Thomas,* it was from the initial date set for ratification of the sale to the day that the sale was finally ratified. By contrast, appellant in the instant case raises different arguments for separate and distinct time periods within the overall time span from the date of the foreclosure sale to the date of settlement. Therefore, for the purpose of our analysis, we will divide that time span into three periods: the date of the foreclosure sale, June 30, 2008, to the initial

date set for final ratification, August 15, 2008 ("Period One"); the initial date set for final ratification, August 15, 2008, to the actual date of final ratification, October 31, 2008 ("Period Two"); and the actual date of final ratification, October 31, 2008, to the date of settlement, December 8, 2008 ("Period Three").

In the instant case, the "Terms of Sale" section of the advertisement of the foreclosure sale, which included a provision stating that, "[i]n the event settlement is delayed for any reason, there shall be no abatement of interest," became a term of the contract that was made when the sale was ratified by the trial court. *White*, 152 Md.App. at 244, 831 A.2d 517; *Thomas*, 183 Md.App. at 400, 961 A.2d 655. *Thomas* makes clear that the contractual prohibition of the abatement of interest was presumptively binding on appellant and appellees. 183 Md.App. at 402, 405, 961 A.2d 655. Under Maryland Rule 5–301, "a presumption imposes on the party against whom it is directed the burden of producing evidence to rebut the presumption." Accordingly, appellees had the initial burden of showing that the instant case fell within one of the equitable circumstances delineated in *Donald.* Appellees sought to satisfy that burden by pointing to the delay in the ratification of the foreclosure sale caused by the exceptions filed by the former owners of the subject properties, over which delay appellees had no control. The trial court agreed with appellees and abated all of the interest accruing from the date of the foreclosure sale (June 30, 2008) to the date of settlement (December 8, 2008) (Periods One, Two, and Three).

It is clear from the record in the case *sub judice* that Period Two, the time period from the initial date set for final ratification of the foreclosure sale (August 15, 2008) to the actual date of final ratification (October 31, 2008), fits squarely within the third equitable circumstance delineated in *Donald,* because Period Two constituted a delay "caused by the conduct of other persons beyond the power of the purchaser to control or ameliorate." 302 Md. at 477, 488 A.2d 971. It is beyond dispute that the final ratification of the foreclosure

sale was delayed for seventy-seven days because the former owners filed exceptions. Moreover, appellant's counsel acknowledged during the hearing before the circuit court that the delay "to the final ratification on October 31st was not the fault of [appellant], but was the [former owners'] responsibility, who used the legal process to delay the final ratification of this valuable property."

Appellant's argument that the trial court failed to exercise discretion when it decided to abate the interest for Period Two is unpersuasive. The record reflects that at the hearing on appellees' motion to abate the interest, the trial judge carefully considered the arguments of counsel for the parties, expressly referred to the principles articulated in Judge Moylan's opinion in *Thomas*, and determined that the delay occasioned by the filing of exceptions came within one of the equitable principles set forth in *Thomas*. Accordingly, the trial court properly exercised its discretion by abating the interest accrued during Period Two.

■ On the other hand, there is nothing in the record to indicate that Periods One and Three involved a delay in the foreclosure process, or that, if there was a delay, such delay "was caused by the conduct of other persons beyond the power of the purchaser to control or ameliorate." *See Donald*, 302 Md. at 477, 488 A.2d 971. Period One, which covered the time period from the date of the foreclosure sale (June 30, 2008) to the initial date for final ratification (August 15, 2008), comprised the time necessary for the ratification of a foreclosure sale under the rules. As previously stated, Rule 14–305(a) provides that the person authorized to conduct the sale (in this case, appellant as trustee) has up to 30 days after the foreclosure sale to file a report of sale with an affidavit of fairness of sale and truth of the report. Here, appellant filed the report of sale on July 16, 2008, 16 days after the sale.[9]

---

9. Appellant filed a Report of Sale on July 7, 2008, an Amended Report of Sale on July 14, 2008, and a Second Amended Report of Sale on July 16, 2008. The purpose of the amended reports of sale was to clarify

Once the report is filed, Rule 14–305(c) requires the clerk of the court to issue a notice of the sale indicating that the sale will be ratified within 30 days after the date of the notice unless cause to the contrary be shown. In the instant case, the notice of sale was issued on July 16, 2008, and stated that final ratification would take place unless cause to the contrary be shown on or before August 15, 2008. But for the filing of exceptions by the former owners, the process for achieving final ratification after the foreclosure sale would have been accomplished within 46 days, which was well within the 60 days contemplated by the rules. There was thus no delay associated with Period One and no factual or legal basis for the trial court to order an abatement of interest. Accordingly, the trial court abused its discretion by abating the interest accrued from the date of the foreclosure sale (June 30, 2008) to the initial date set for final ratification (August 15, 2008).

■ According to the "Terms of Sale" contained in the advertisement of the foreclosure sale, settlement on the foreclosure sale was to take place within ten days after final ratification by the trial court. Settlement on the sale in the instant case did not occur until 38 days after the date of final ratification (Period Three). Appellees did not provide the trial court, nor this Court on appeal, with any reason for the delay in going to settlement. Because the prohibition against abatement of interest was presumptively binding on appellees, the burden was on appellees to show that the delay in Period Three came within one of the three equitable circumstances set forth in *Donald.* This they failed to do. Accordingly, there was no legal basis to support the abatement of interest accruing from the date of final ratification (October 31, 2008) to the date of settlement (December 8, 2008), and the trial court abused its discretion by abating the interest accruing in that period.

---

that the purchase price of $1,200,000 included "payment of the first Deed of Trust by the Purchaser."

Appellees, nonetheless, point to the statement by the trial judge that her only option was to abate the entire interest, because "nothing was presented to me to compute anything" other than the amount set forth in the settlement statement, which covered the entire time period from the date of sale to the date of settlement. From this statement, appellees contend that the trial court "did the only thing it could do based upon the record before it, which was to abate all interest accrued against Appellees." Appellees are mistaken.

As previously indicated, appellees had the burden of overcoming the presumptively binding term of the sale that prohibited the abatement of interest. By abating all of the accrued interest because of a failure to be provided with a computation of interest for a lesser time period had the effect of improperly placing the burden on appellant to show the amount of interest that should *not* be abated.

In addition, appellees are mistaken that the record before the trial court did not enable the court to compute the amount of the interest to be abated for the period of delay from the initial date set for final ratification (August 15, 2008) to the actual date of final ratification (October 31, 2008). One of the exhibits admitted at the hearing on appellees' motion to abate the interest was a copy of the advertisement for the foreclosure sale, which stated, *inter alia,* that the sale would take place on June 30, 2008, that a deposit of 10% of the purchase price was required, and that interest at the rate of 10% per annum was payable on the unpaid balance "from the date of sale to the date funds are received in the office of [appellant]." Also admitted at the hearing was the settlement statement, dated December 8, 2008, which showed the purchase price of $1,200,000 and a deposit of $120,000, leaving an unpaid principal balance of $1,080,000. Finally, the record before the trial court contained all of the relevant dates that defined Periods One, Two, and Three previously discussed. As a result, the trial court had before it all of the necessary information to compute the amount of interest accruing during any time period from the date of the foreclosure sale to the date of settlement.

Lastly, appellees argue that the circumstances in this case are essentially indistinguishable from the circumstances in both *Thomas* and *Baltrotsky*. We agree that *Thomas, Baltrotsky*, and the case *sub judice* all involved litigation efforts by the previous owners that delayed the final ratification of sale and/or the settlement. However, unlike the foreclosure sale purchaser in *Thomas*, who sought an abatement of interest for the delay from the initial date set for ratification of the sale to the actual date of final ratification, 183 Md.App. at 391–92, 961 A.2d 655, appellees in the instant case assert that they are entitled to an abatement of *all* accrued interest from the date of the sale to the date of settlement. Similarly, in *Baltrotsky*, the former owner's series of court filings caused delay that, coincidentally, stretched from shortly after the date of the foreclosure sale to the date of settlement. 395 Md. at 473, 910 A.2d 1089. In contrast, appellees here made a showing of delay attributable to the previous owners' exceptions for only 77 days (Period Two) out of a total of 161 days from sale to settlement.

In conclusion, the circuit court's decision to abate the interest that accrued on the unpaid balance of the purchase price from June 30, 2008 to August 15, 2008 and from October 31, 2008 to December 8, 2008 constituted an abuse of discretion. We therefore affirm in part and reverse in part and remand the case to the circuit court for a determination of the appropriate amount of interest to be abated for the 77 days of delay between August 15, 2008 and October 31, 2008.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY AFFIRMED IN PART AND REVERSED IN PART; CASE REMANDED TO THAT COURT FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION; COSTS TO BE PAID 50% BY APPELLANT AND 50% BY APPELLEES.**