488 A.2d 971

**Robert B. DONALD et al.**

**v.**

**Steuart CHANEY et al.**

**No. 57, Sept. Term, 1984.**

Court of Appeals of Maryland.

March 7, 1985.

466

William M. Simmons, Annapolis (Michaelson & Simmons, P.A., Annapolis, on brief), for appellant.

Sara H. Arthur, Annapolis (Steven R. Migdal, Manis, Wilkinson, Snider & Goldsborough, Chartered, Annapolis, on brief), for appellee.

Argued before MURPHY, C.J., and SMITH, COLE, RODOWSKY and COUCH, JJ., and W. ALBERT MENCHINE, Associate Judge of the Court of Special Appeals (retired), Specially Assigned.

W. ALBERT MENCHINE, Judge.

This appeal is a spin-off from real estate mortgage foreclosure proceedings instituted in the Circuit Court for Anne Arundel County on behalf of Huffman, et ux., mortgagees against Herring Bay Partnership (Partnership) and others, mortgagors. The waterfront real estate of substantial acreage had been operated as a marina with slips for 200 boats.

The appellants, Robert B. Donald, Arnold C. Gay and Donald E. Zinn (Claimants), occupied a dual role in the proceedings: (1) as three of four limited partners in the Partnership[1] and (2) as Claimants to a distributive share of the proceeds of the mortgage sale as creditors of the Partnership. The Appellees, Steuart Chaney, Richard Chaney and George M. King (Purchasers), were the high bidders for the property at $1,150,000 at the mortgage sale.

Claimants' entitlement to payment from the proceeds of sale was junior to all other creditors. Those proceeds were insufficient to pay Claimants in full unless Purchasers were

---

**1.** The fourth limited partner was Robert DeStefano, who did not join in a petition seeking interest payments from the Purchasers to be discussed *infra* and who opposed appellants' claim against the proceeds of sale.

required to pay interest upon the unpaid balance of the sales price from ten days after the date of the court's ratification of the sale (December 27, 1982) to the date of settlement. Claimants filed a petition seeking a court order "to require assignee to collect and purchaser to pay" such interest. Purchasers answered the petition seeking dismissal on equitable grounds. The assignee for foreclosure did not respond to the petition and has taken no position with respect to the dispute.

The relief sought by Claimants was denied by the chancellor and on appeal the Court of Special Appeals affirmed in a unreported opinion. We granted certiorari to consider the question.

Claimants contend that the general rule applicable to sales at foreclosure requires purchasers at mortgage sale to pay interest upon the unpaid balance of the purchase price from the date prescribed for settlement to the actual date thereof, and that there are no equitable considerations justifying relaxation of the rule. Purchasers contend that under the facts and circumstances of the case, determination of the question fell within the judicial discretion of the chancellor and that the same was properly exercised.

The general chancery practice concerning interest payments on sales under court decree is of ancient lineage. Chancellor Bland, in *Brown v. Wallace*, 2 Bland 585, 594 (same case 4 G. & J. 479, 486) (1830), had declared:

> "It is a general rule as to sales under decrees of this Court, that the purchaser always pays interest, according to the terms of the decree, from the day of sale, whether he gets possession or not. *His getting possession is, in no case, allowed to be a condition precedent to the payment of either principal or interest of the purchase money.* The purchaser is presumed to regulate his bidding with a view to the known powers and rules of the Court as to delivering possession. There is, therefore, nothing in this objection, even supposing this purchaser himself to have been in no default; and, by promptly

giving his bond, to have so clothed himself with an equity to demand a delivery of possession immediately after the sale had been finally ratified." (Emphasis added.)

Again in *Wagner, et al. v. Cohen*, 6 Gill 97, 102–03 (1847), it was said:

"It is certainly true that a contract of sale made between the Court as the vendor of the property, through the agency of a trustee, and the purchaser, is never regarded as consummated until it has received the sanction and ratification of the Court....

"Although this is the character of the imperfect right acquired by a purchaser at a sale of this kind; yet, it gives to him, an inchoate and equitable title which becomes complete by the ratification of the Court. When this is accomplished, the ratification retroacts, and he is regarded by relation as the owner from the period of the sale. He is as such proprietor entitled to the intermediate rents and profits of the estate; he cannot escape from the sale, because, he may believe it to be disadvantageous, *and is bound to pay interest on the purchase money from its date*; and has, therefore, a direct and strong interest in protecting the property from injury, and rendering it as productive as possible." (Emphasis added.)

To the same effect is *Latrobe and Whistler v. Winans*, 89 Md. 636, 43 A. 829 (1899), wherein it was said at page 655, 43 A. 829:

"If the delay in completing the contract be attributable to the purchaser, he will be obliged to pay interest on the purchase money from the time the contract ought to have been carried into effect ...."

That the general rule should not be applied inflexibly, however, was made clear in *Oldenburg v. Regester*, 118 Md. 394, 85 A. 411 (1912). The late Judge Urner, after noting that settlement had been delayed by the filing of exceptions to the sale in no way induced by action of the purchaser, and after recognizing that the cases cited *supra* had declared a general rule that the purchaser is ordinarily liable

for interest upon the unpaid purchase price upon ratification of sale, said at page 398, 85 A. 411:

> "The cases cited were concerned with conditions altogether different from the present, and the rule invoked is not one of absolute and unvarying application. In a very recent case this Court has manifested its disposition to be governed by equitable considerations in dealing with such questions. *Leviness v. Consol. Gas Co.*, 114 Md. 573 [80 A. 304]." [2]

In *Oldenburg, supra*, the purchasers had filed exceptions to a sale conducted in March, 1910, because examination of the land records disclosed an unreleased mortgage for $15,000. Although the mortgage had been paid prior to the sale, the purchasers were not so informed. When so informed, the exceptions were voluntarily dismissed and the sale ratified in October, 1910. At settlement shortly thereafter, the trustee demanded payment of interest by the appellants for the period of delay. Interest for that period was allowed by the auditor with exceptions overruled by the lower court. On purchasers' appeal the decree requiring payment of interest was reversed. The Court after observing that the trustee might at any time have obviated the difficulty by causing the release to be recorded, found the record showed "affirmatively and without contradiction that the appellants [purchasers] earnestly endeavored to accomplish that result." 118 Md. at 398, 85 A. at 412.

---

2. In *Leviness v. Consol. Gas Co.*, 114 Md. 559, 80 A. 304 (1911), a delay in settlement was occasioned by the necessity for judicial decision upon whether title to the property was good and marketable. The lower court required payment of interest from the date of its decree. The appellants urged that as appellate review of the cause was essential to make title good and marketable, they should not be subjected to costs below, and that taxes and interest should be adjusted to the date of the decree in this Court. The requested relief was granted in these words, "In our judgment, it is equitable, under the circumstances of the case that the dispositions thus proposed as to costs, interest and taxes should be adopted, and we will decree accordingly." 114 Md. at 573, 80 A. 304.

In *Raith v. Bldg. & Loan Ass'n,* 140 Md. 542, 118 A. 67 (1922), this Court gave consideration to and rejected a purchaser's contention that equitable considerations justified relaxation of the rule. In *Raith,* a second mortgagee filed exceptions to the first mortgagee's sale. The exceptions were overruled on October 2, 1920 and the second mortgagee appealed, but without filing an appeal bond. The order of the trial court ratifying and confirming the sale was affirmed on May 21, 1921. Raith sought relief from the payment of interest on the unpaid balance during that interval. We pointed out, citing then Maryland Code, Art. 5, § 29 (1911 Bagby)[3] that an appeal without bond did not affect the rights of a purchaser at a judicial sale even if the order of ratification is reversed on appeal and that "Raith could have had possession of the properties and have been protected ... if he had complied with the terms of sale at that time." 140 Md. at 546, 118 A. 67. The order requiring Raith to pay interest upon the unpaid balance was affirmed.

In *Merryman v. Bremmer,* 250 Md. 1, 241 A.2d 558 (1968) where the trustees had failed to seek resale at the risk of the purchaser under then applicable Maryland Code, Article 16, § 163 (1957)[4] and the purchaser was at all times able to pay the relatively small amount involved and ready and willing to do so when the amount of that balance was made known to the purchaser by the trustees, we said: "The delay,[5] therefore, must be attributed to the trustee,

---

**3.** Now controlled by Maryland Rule 1017. *See Leisure Campground v. Leisure Estates,* 280 Md. 220, 372 A.2d 595 (1977).

**4.** Repealed by ch. 36, § 1 of the Laws of 1962. Thereafter, the provisions of Maryland Rule BR6 control such procedures. *See* footnote 7, *infra.* The rule is a restatement of the preexisting statutory law. *See McCann v. McGinnis,* 257 Md. 499, 506, 263 A.2d 536, 539 (1970).

**5.** Although the delay extended from 1937 to 1960, the evidence showed that it did not result in any detriment to the trust estate. *Merryman v. Bremmer,* 250 Md. 1, 10, 241 A.2d 558, 564. In the subject case, however, the delay lessened the amount recoverable

Merryman, and not to Bremmer." 250 Md. at 10, 241 A.2d 558.

The present issue was initiated on January 25, 1983, when Claimants filed a petition to require the trustee to collect and the purchasers to pay interest on the unpaid balance of the purchase price. Purchasers answered Claimants' petition, claiming relief on equitable grounds. Trustee did not answer, taking no position on the question. The trustee did, however, file a petition for resale at the risk of Purchasers,[6] pursuant to Maryland Rule BR6.[7]

On March 9, 1983, the lower court called the case for hearing on trustee's petition for resale and Claimants' petition as to interest. At the outset of that hearing the Purchasers, Claimants, mortgagees, and trustee agreed that a consent order[8] should be passed requiring resale of the property at the risk of the Purchasers unless stipulated conditions for payments to the mortgagees were met and settlement occurred. Settlement ultimately occurred at a much later date than was prescribed in the conditions of sale.[9]

The trial court then proceeded to consideration of Claimants' petition. After hearing statements from counsel for

---

from the proceeds of sale by the Claimants by reason of the continuing accrual of interest payable to the mortgagees and to creditors holding superior liens upon such proceeds.

6. This petition was not included in the agreed record submitted to this Court but we assume it was filed at the time of Claimants' petition since both matters were considered at the same hearing.

7. Maryland Rule BR6 in part here pertinent reads as follows:
 "c. *Resale.*
 In case of default by the purchaser in a sale reported to the court, the court, on application, and after notice to the defaulting purchaser, may order a resale at the risk and expense of such purchaser, or may take such other action as justice may require."

8. The consent order was not included in the agreed record submitted to this Court.

9. The precise date of settlement is not determinable from the sparse record.

all parties as to their respective legal positions concerning that petition, a witness, Steuart Chaney, one of the Purchasers, was called as the sole witness.

The mortgage sale itself furnishes no factual dispute. The dispute arises from antecedent, concurrent and subsequent events incident thereto that Purchasers contend give rise to equitable considerations justifying relaxation of the general rule and entitling them to equitable relief from any obligation to pay interest upon the unpaid balance of the purchase price from December 27, 1982 to the date of settlement.

## THE SALE

Advertising of the mortgage sale advised that the property would be sold on November 8, 1982 to the highest bidder; that a deposit of $50,000 would be required at the time and place of sale, and that the unpaid balance must be paid within 10 days after ratification of the sale by the Court. The ad was silent as to payment of interest upon the unpaid balance. The Purchasers were the high bidder at sale at $1,150,000 and the required deposit of $50,000 was made. The sale was ratified by the Court on December 17, 1982. Settlement did not occur within 10 days from that date, being delayed for a number of months thereafter.

## THE ANTECEDENT, CONCURRENT AND SUBSEQUENT EVENTS

The testimony of the sole witness, Steuart Chaney, is summarized in narrative form as follows: The Purchasers at the mortgage sale were Steuart Chaney, Richard H. Chaney and George M. King. Prior to the sale the witness had ongoing discussions with Herring Bay Partnership concerning the property in the early summer of 1982 after seeing the foreclosure notice. On the Friday before the sale, the witness and King (another one of the three purchasers) met with Arnie Gay and Bob DeStefano (two of the limited partners) who in their own words were the primary

owners and could influence the purchase price. They said they would take 1.2 million dollars and although the Purchasers were not ready to pay that much, the parties were trying to work out a scheme whereby a contract could be agreed upon before the public sale; they would attend the sale to bid whatever it took to buy it but with the understanding that if the sum bid exceeded 1.2 million dollars, they would forego the excess amount so that the property would be acquired by Purchasers at not more than 1.2 million dollars. No such contract was agreed upon, however. Gay and DeStefano had just come to the Friday meeting from Maryland National Bank (Bank) where they had been advised that the Bank might provide financing.

After discussion, King, DeStefano, Gay and the witness proceeded to a meeting with Bank officials to confirm that the Bank was going to offer a financial proposal which had been prepared by Arnie Gay and Bob DeStefano which was "Yeah, for two years we'll give you thirteen percent money for two years at interest only." And that was the key of the Purchasers' fall back position and a quick settlement situation. At the time of sale, it was still Purchasers' understanding that the Bank would finance this transaction, a circumstance relied on when making the bid.

There were essentially two bidders at the sale that quickly produced a bid of $800,000. One Chuck Collett was bidding against the Purchasers. He had a thirty thousand dollar check—provided by Robert DeStefano—although a down payment of $50,000 was required at the time and place of sale. Collett stood there and ran the bid up to 1.2 million dollars at which point the trustee stopped the auction for a discussion with Collett and DeStefano and then came back, saying they were unqualified bidders and asked, "Would you take it at the 1.15?" The Purchasers agreed that they would. Purchasers had bid 1.15 and then Collett bid the 1.2. After the sale Purchasers went back to the Bank for the needed financing plan which they had proposed but did not get it. All reasonable efforts were made to go to settlement on the property after the Bank declined

to finance it. Purchasers took possession of the property the day after the sale,[10] did work there but collected only $1,143.00 in dockage fees, whereas the Partnership had collected $177,000 in such fees prior to the sale. The dockage fees during the Partnership management had been billed on a fiscal year basis from March 1 to March 1. Claimants had removed a cash box from the premises prior to the sale.

No exception to the sale was taken by the Purchasers on the basis that the sale had been the subject of bidding irregularity although it was known to the Purchasers that they could have excepted at any time prior to ratification.

## ANALYSIS OF THE SUGGESTED EQUITABLE CONSIDERATIONS

It will have been observed that the testimony of the witness Chaney assigned five reasons that he felt demonstrated Purchasers' entitlement to equitable relief. We shall now discuss them.

1. The meeting or meetings of Chaney and King (two of the Purchasers) with Gay and DeStefano (two of the limited partners). As to this contention, analysis of the evidence shows no more of substance than that the Partnership would have agreed to accept $1,200,000 for the property if a contract of sale could be executed prior to sale.

2. That Gay and DeStefano would protect an agreement to accept $1,200,000 by attendance at the sale and, if necessary, to bid the property to a higher figure and then assume an obligation to forego the excess over $1.2 million.

---

**10.** On cross-examination the witness stated that there was a written agreement concerning Purchasers' entry upon the property after the sale the gist of which "was that we could go and take the responsibility ... for the people who had their boats there." The witness assumed that the agreement was with Herring Bay Partnership because Rob Donald and Don Zinn weren't individually involved in it. Although the trial judge requested that the agreement be subsequently filed in the proceedings, the record does not disclose it. Thus, we have no further knowledge of its contents or its signatories.

As to this, the evidence shows that the property was sold for less than $1.2 million so that no such obligation arose.

3. That Gay and DeStefano informed Chaney and King that Maryland National Bank had shown an interest in financing the property by providing "13% for two years at interest only." The evidence shows that the Purchasers Chaney and King thereafter entered into direct discussions with bank officials. There is no suggestion that either Gay or DeStefano was to assume any obligation to the Bank under any financial arrangement to be agreed upon by the Purchasers with the Bank. The financing involved only the Purchasers and the Bank. In short, if a binding contract between Purchasers and the Bank arose from the discussions, then the Purchasers' quarrel is with the Bank—not the Claimants. If the discussions did not produce a binding agreement between Purchasers and the Bank, manifestly the delay in settlement must be attributed to the Purchasers' inability to obtain such a binding commitment. In either case, there is no showing that Purchasers' inability to secure financing within the time limitation prescribed by the terms of the judicial sale had been caused by any action or failure to act by the Claimants.

4. That there were essentially only two bidders at the sale—the Purchasers and one Chuck Collett who made the aborted bid of $1,200,000 with the inadequate $30,000 check ($20,000 less than the required down payment at the sale). There is a complete absence of any evidence, however, that Collett's bid was not in his own interest; or that he was a "stalking horse" for the Claimants; or that the Claimants were in any way connected with Collett's inability to be a qualified bidder for want of sufficient funds for the required sales deposit. The testimony did show that the inadequate check was supplied by DeStefano. No showing was made, however, that the Claimants were parties to a Collett-DeStefano undertaking, if there was one. Indeed, the record shows affirmatively that the interests of DeStefano and the Claimants were adverse. DeStefano had filed

a petition in these proceedings seeking disallowance of their claim.

5. That Herring Bay Partnership had: (1) collected $177,000 in rentals from boat slips prior to entry by the Purchasers upon the property and that they had been able to collect only $1,143.00 and (2) that the Partnership had removed the cash box from the premises prior to the sale. The evidence shows that slip rental charges during operation of the marina by the Partnership had been billed annually on a March 1 to March 1 basis. Under such conditions it is only to be expected that a very large proportion of slip rentals for that fiscal year would have been collected by the management prior to November 8, 1982—the date of sale.[11] As to the removal of the cash box, the Partnership acquired the land and improvements at the sale—not the business assets of the Partnership.

Our examination of the cited cases decided by our predecessors persuades us that a purchaser at a judicial sale will be excused from requirement to pay interest upon the unpaid balance for the period between the time fixed for settlement and the date of actual settlement only when the delay stems from neglect on the part of the trustee (*Oldenburg v. Regester; Merryman v. Bremmer,* both *supra* ); was caused by necessary appellate review of lower court determinations (*Leviness v. Consol. Gas Co.,* 114 Md. 573, 80 A. 304) or was caused by the conduct of other persons beyond the power of the purchaser to control or ameliorate (*Raith v. Bldg. & Loan Ass'n, supra* ).

In the subject case the advertisement of sale fixed a specific time limit within which the unpaid balance due must be paid to the trustee. The sale was in no way conditioned upon obtention of financing by the Purchasers. In ordinary

---

11. The Purchasers were in possession of the premises from the day following the sale until the date of settlement and thus had "a direct and strong interest in protecting the property from injury, and rendering it as productive as possible." *Wagner v. Cohen,* 6 Gill 97, 103 (1847).

circumstances and in the absence of special provisions in the sale offer, a delay caused by difficulty in obtaining financing would not discharge a purchaser from the obligation to pay interest from the date fixed for settlement by the terms of sale until a delayed settlement date. In this case the sole factor causing the delay in settlement was the inability of the Purchasers to obtain financing for the payment of the balance of the purchase price within the time fixed for settlement under the terms of sale stated in the advertisement.

 It plainly is the duty of a purchaser at a judicial sale to assure the court[12] that he is ready, willing and able to comply with the terms fixed for its completion. We find in this record no equitable considerations justifying relief to the Purchasers from the obligation to pay interest on the unpaid balance for the period of delay in settlement. The order of the trial court relieving Purchasers from that obligation was clearly erroneous.

 Claimants have suggested a somewhat complex plan for the determination of the extent of Purchasers' liability. We shall make no comment upon it except to say we reject it for the reason that their liability is determined by a simple and concise calculation, namely, the trial court should enter judgment against the Purchasers for the sum produced by interest at the rate of 10% per annum upon the unpaid balance for the period from December 27, 1982 to the actual date of settlement, with legal interest on the judgment[13] from that date until paid. The trustee will make distribution of any monies derived from that judg-

---

**12.** In *Merryman v. Bremmer,* 250 Md. 1, 8, 214 A.2d 558 (1968), this Court pointed out that in a judicial sale, "[t]he court itself is the vendor, the trustee being merely the agent of the court to carry into effect the order of court directing the sale, and upon final ratification of the sale by the court the contract of purchase becomes complete."

**13.** *See* Maryland Code § 11–107 of the Courts and Judicial Proceedings Article.

ment to the distributees entitled thereto as their interests and priorities may require.

JUDGMENT OF THE COURT OF SPECIAL APPEALS VACATED AND CASE REMANDED TO THAT COURT FOR THE ENTRY OF AN ORDER VACATING THE JUDGMENT OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY AND REMANDING THE CASE TO THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY THE APPELLEES.