*North Star Properties, LLC v. Jeffrey Nadel, et al.*, No. 831, Sept. Term 2020.  Opinion by Alpert, J.

**REAL PROPERTY – FORECLOSURE – POST-SALE INTEREST AND TAXES – ABATEMENT – JUDICIAL STAY DURING COVID-19 PANDEMIC**

As a matter of contract and convention, foreclosure sale purchasers who deposit a portion of the purchase price commonly "pay interest upon the unpaid balance for the period between the time fixed for settlement and the date of the actual settlement" and pay property taxes from the date of the sale.  *See Donald v. Chaney*, 302 Md. 465, 477 (1985); *AMT Homes, LLC v. Fishman*, 228 Md. App. 302, 310 (2015).  Here, ratification of the sale was delayed after the Chief Judge of the Court of Appeals of Maryland temporarily stayed pending foreclosure proceedings during the COVID-19 pandemic. Although equitable relief from the contract terms allocating responsibility for post-sale interest and taxes may be warranted when delayed ratification is "caused by the conduct of other persons beyond the power of the purchaser to control or ameliorate[]" *Donald*, 302 Md. at 477, neither the court, nor the Chief Judge is a "person" for that purpose.  Applying lessons from *AMT Homes*, 228 Md. App. at 312, holding that a foreclosure purchaser was "not entitled to a reduction in the . . . payments it promised to pay simply because the court exercised its oversight role over a longer-than-ideal period of time" due to a court backlog, we conclude that the Circuit Court for Prince George's County did not err or abuse its discretion in denying the foreclosure purchaser's motion to abate interest and taxes based on the delay in ratification caused by the public health emergency stay.

Circuit Court for Prince George's County
Case No.: CAEF 1839183

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 831

September Term, 2020

_____

NORTH STAR PROPERTIES, LLC

v.

JEFFREY NADEL, ET AL.

_____

Kehoe,
Arthur,
Alpert, Paul E.
   (Senior Judge, Specially Assigned),

JJ.
_____

Opinion by Alpert, J.
_____

Filed: November 19, 2021

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

As a matter of contract and convention, foreclosure sale purchasers who deposit a portion of the purchase price commonly "pay interest upon the unpaid balance for the period between the time fixed for settlement and the date of actual settlement" and pay property taxes from the date of the sale. *See Donald v. Chaney*, 302 Md. 465, 477 (1985); *AMT Homes, LLC v. Fishman*, 228 Md. App. 302, 310 (2016). Yet if ratification of the sale or the ensuing settlement is delayed, the Court of Appeals has held that equitable exceptions may be warranted under certain circumstances, including when the delay is "caused by the conduct of other persons beyond the power of the purchaser to control or ameliorate." *Donald*, 302 Md. at 477.

In this appeal, we are asked to hold that the Circuit Court for Prince George's County erred or abused its discretion in refusing to abate post-sale interest and taxes under this exception, after the Chief Judge of the Court of Appeals of Maryland temporarily stayed pending foreclosure proceedings during the COVID-19 pandemic. We decline to do so. Applying lessons from *AMT Homes,* 228 Md. App. at 312, holding that a foreclosure purchaser was "not entitled to a reduction in the . . . payments it promised to pay simply because the court exercised its oversight role over a longer-than-ideal period of time" due to a court backlog, we conclude that the circuit court did not err or abuse its discretion in denying the motion of North Star Properties, LLC ("North Star"), appellant, to abate interest and taxes based on the public health emergency stay.

## BACKGROUND

At a foreclosure sale conducted on February 25, 2020, Sukhpal Singh and Rajwant S. Virk jointly purchased 901 Park Terrace, Fort Washington, Maryland 20744 (the

"Property") for $222,000. During the course of the foreclosure proceedings, North Star was substituted for Singh and Virk as the foreclosure purchaser. For convenience, we shall refer to North Star as the Foreclosure Purchaser, and to Jeffrey Nadel and the other substitute trustees collectively as the Substitute Trustees.[1]

The Foreclosure Purchaser deposited $46,000. In pertinent part, the Contract of Sale for the Property provides:

> Balance of the purchase price to be paid in cash within ten days of final ratification of sale by the Circuit Court for Prince George's County, time being of the essence for purchaser. In the event that settlement does not occur within the said ten days, the purchaser shall be in default. . . . Interest to be paid on the purchase money less the stated deposit called for herein, at the rate pursuant to the Deed of Trust Note from the date of auction to the date funds are received in the office of the Substitute Trustee. *There shall be no abatement of interest due from the purchaser in the event* additional funds are tendered *before settlement or if settlement is delayed for any reason, including but not limited to* exceptions to sale, bankruptcy filings by interested parties, *Court administration of the foreclosure* or unknown title defects. *All taxes . . . are to be adjusted to the date of auction and thereafter are to be assumed by the purchaser.*

(Emphasis added.)

On March 18, 2020, Mary Ellen Barbera, then Chief Judge of the Court of Appeals of Maryland, issued an "Administrative Order on Suspension of Foreclosures and Evictions during the COVID-19 Emergency" that was "effective immediately[.]" *See* https://mdcourts.gov/sites/default/files/adminorders/20200316restrictedoperationsduetoco vid19.pdf. The order stayed all "foreclosures of residential properties . . . pending in the circuit courts[.]"

---

[1] The Substitute Trustees, appellees, are Jeffrey Nadel, Scott Nadel, Daniel Menchel, and Doreen Strothman.

On April 20, 2020, the Foreclosure Purchaser filed a Motion to Abate and Limit Interest, seeking to reduce both post-sale interest and taxes on the Property. Citing the Chief Judge's order, the Foreclosure Purchaser argued that because the "unforeseen stay of proceedings that was a response to the COVID-19 pandemic" differs from a foreseeable "court back log[,]" it "would be inequitable and contrary to the holdings and spirit of existing case law" to make foreclosure purchasers "responsible for all interest and real property taxes from the date of the foreclosure sale up to the date of settlement." The Foreclosure Purchaser acknowledged that in these circumstances, requesting abatement was "tantamount to requesting a reallocation of costs" because it "would fully shift the additional costs from the foreclosure purchaser to the lender[,]" but argued that the COVID-19 stay "was not reasonably foreseeable and is not of the type a foreclosure purchaser could or should have been aware of at the time of its bid."

The Substitute Trustees responded that the "standard language" in the Contract of Sale expressly precludes such abatement regardless of the reason for any delay in ratification. They argued that this pandemic-related delay "is most closely analogous to where the delay is caused by Court review[,]" which under *AMT Homes*, 228 Md. App. at 313, "'falls within the universe of risks properly allocated to purchasers, and [a] cost of doing business[.]'" Furthermore, the Foreclosure Purchaser cited "no authority for abating real estate taxes."

In reply, the Foreclosure Purchaser argued that *AMT Homes* is distinguishable because the delay at issue in that case was in the "lower court review process that included the ratification of the sale[,]" whereas this delay in the foreclosure process was caused by

the Chief Judge's order staying all foreclosure proceedings. In the Foreclosure Purchaser's view, the pandemic-related delay was no different "than a delay caused [by] a neglectful trustee, a properly brought appeal or the frivolous filings by a party defendant, all of which are recognized bases for abatement[,]" because the court was "impeded from fulfilling its review obligations due to conduct of another party without fault of the foreclosure purchaser."

On June 3, 2020, Chief Judge Barbera issued an amended order lifting the stay on residential foreclosure proceedings, effective July 25, 2020. *See* https://www.mdcourts.gov/sites/default/files/adminorders/20200603amendedliftingsuspe nsionduringcovidofforeclosuresevictionsandotherejectmentsinvolvingresidences.pdf.

By written order entered August 31, 2020, the circuit court denied the Foreclosure Purchaser's motion for abatement. The court concluded that "the delay in ratifying the sale was due to an unprecedented pandemic and through no fault of any party[,]" so that abating post-sale taxes would reallocate the "well-known" responsibility that "frames everyone's expectations." *See AMT Homes*, 228 Md. App. at 310. The court also concluded that it did not have jurisdiction to reallocate tax obligations to "the original homeowner" under these circumstances.

The Foreclosure Purchaser moved to alter or amend the order, arguing that the "[c]ourt only ruled on Foreclosure Purchaser's request to abate real property tax and did not rule on Foreclosure Purchaser's request to abate interest." In response, the Substitute Trustees, again invoking the decision and reasoning in *AMT Homes*, pointed to the

4

language in the Contract of Sale to argue that if the Foreclosure Purchaser did not accept those terms, it "could have chosen not to bid at the sale."

By written order entered September 16, 2020, the circuit court denied the motion to alter or amend. Clarifying its earlier order, the court applied the same principles governing allocation of post-sale tax responsibility to post-sale interest. In addition, the court concluded that under *AMT Homes*, a "court is not deemed a 'person beyond the power of the purchaser to control or ameliorate'" (quoting *AMT Homes,* 228 Md. App. at 311).

On September 24, 2020, the court entered an order ratifying the foreclosure sale. The Foreclosure Purchaser noted this timely appeal on October 9, 2020, presenting five questions that we consolidate and address collectively, to determine whether the circuit court erred or abused its discretion in denying abatement based on the pandemic stay on foreclosure proceedings.[2] *See generally Huertas v. Ward*, 248 Md. App. 187, 205 (2020)

---

[2] In its brief, North Star presents the following questions:

1. Did the Circuit Court abuse its discretion in denying Appellant's Motion to Abate and Limit Interest and Real Property Taxes filed with the Circuit Court on April 20, 2020 and Appellant's Motion to Alter o[r] Amend Judgment Pursuant to Maryland Rule 2-534 filed with the Circuit Court on September 3, 2020[?]

2. Did the Circuit Court abuse its discretion when it failed to rule the court is not a "person beyond the power of the purchaser to control or ameliorate within the context of the facts presented in this case"[?]

3. Did the Circuit Court abuse its discretion when it did not consider the equities at all and declined to exercise its discretion[?]

(continued…)

("an order ratifying a foreclosure sale is a final judgment as to any rights in the real property, even if the order refers the matter to an auditor to state an account").

## STANDARD OF REVIEW

"Whether to abate the payment of interest by a [foreclosure sale] purchaser . . . is a decision entrusted to the discretion of the hearing judge." *Thomas v. Dore*, 183 Md. App. 388, 405 (2008). *See Baltrotsky v. Kugler*, 395 Md. 468, 480-81 (2006). This standard also applies to a foreclosure purchaser's request for abatement of post-sale taxes. *Cf. AMT Homes,* 228 Md. App. at 311 ("declin[ing] to reallocate responsibility for interest and taxes when the delay results from judicial backlogs"). "Although we review *de novo* the legal standard that the court applied, we review the court's decision to deny abatement . . . under 'the familiar abuse of discretion standard.'" *Id.* at 308 (citation omitted). *See Baltrotsky*, 395 Md. at 477 n.7. We therefore ask if the challenged decision "'either does not logically follow from the findings upon which it supposedly rests or has no reasonable relationship to its announced objective.'" *Zorzit v. 915 W. 36th Street, LLC*, 197 Md. App. 91, 97 (2011) (quoting *North v. North*, 102 Md. App. 1, 14 (1994)).

---

4. Did the Circuit Court abuse its discretion when it ruled that reallocation of real property taxes was not within the Circuit Court's jurisdiction[?]

5. Did the Circuit Court abuse its discretion when the order denying Appellant's request to abate interest and real property taxes did not address whether Appellant was afforded its right to a timely decision[?]

DISCUSSION

As grounds for abating both post-sale interest and property taxes, the Foreclosure Purchaser cites to "Executive and administrative orders issued through the State of Maryland—commencing with the March 18, 2020, emergency order signed by" then Chief Judge Mary Ellen Barbera, staying "all pending residential foreclosures[.]" The Foreclosure Purchaser emphasizes the "novel set of facts not seen in any reported case; *to wit*: a delay caused by administrative orders entered in response to the COVID-19 pandemic that entirely closed off access to the judicial system for the type of proceedings needed to complete the transactions and thereafter limited and qualified the proceedings." (Italics in original.) In the Foreclosure Purchaser's view, the Chief Judge's stay orders effectively "frustrated" the parties' "basic assumption that come the settlement day, the court would be open to process the settlement."

In these circumstances, the Foreclosure Purchaser argues that "an equitable revision of a term of the contract" was warranted under the "recognized exception" for delay "caused by the conduct of other persons beyond the power of the purchaser to control or ameliorate." *Donald*, 302 Md. at 477. The Foreclosure Purchaser contends that the circuit court failed to properly exercise its discretion when it declined to abate post-sale interest and taxes that accrued as pending foreclosure proceedings were stayed temporarily by court order during the COVID-19 emergency.

With respect to post-sale interest, the Substitute Trustees respond that the Foreclosure Purchaser "did not demonstrate the necessary elements under existing case law" or "any compelling equity" that would warrant a decision "to shift costs to the lender

7

or former owner." Arguing that "[t]his situation is not due to a catch-all 'other persons' under [*Donald v.*] *Chaney*[,]" the Substitute Trustees contend that any "delay in ratification caused by the Pandemic and resulting court closures and delays are, as a practical matter, indistinguishable from delay caused by the *AMT* Court backlog[,]" because "[n]either could have been anticipated in advance[.]" As for abatement of property taxes, the Substitute Trustees point out that the Foreclosure Purchaser proffers "no authority" for such an abatement and that, in any event, the delay in settlement did not cause the Foreclosure Purchaser to pay "additional taxes [it] would not have otherwise had to pay."[3]

We agree with the Substitute Trustees that the circuit court properly exercised its discretion in denying the Foreclosure Purchaser's motion to abate interest and taxes that accrued following the foreclosure sale. As the parties acknowledge, "[i]n ordinary circumstances and in the absence of special provisions in the sale offer," a foreclosure purchaser may not be "discharge[d] . . . from the obligation to pay interest from the date fixed for settlement by the terms of sale until a delayed settlement date." *Donald*, 302 Md. at 477-78. *See also AMT Homes*, 228 Md. App. at 309-10. The Court of Appeals has recognized three exceptions to this general rule:

---

[3] The Substitute Trustees also contend there is no equitable basis for abating interest or taxes, because even after the judicial stay on foreclosure proceedings was lifted on July 25, 2020, the Foreclosure Purchaser "delayed their own settlement from August, 2020 through at least May, 2021, a span of nine months, without any apparent ill effect[.]" In these circumstances, the Substitute Trustees argue, the Foreclosure Purchaser could not have been "unduly harmed" by judicial stay. We do not address this contention because it rests on allegations regarding post-ruling events, for which the Substitute Trustees offer no citation to the record. *See* Md. Rule 8-504(a)(4) ("Reference shall be made to the pages of the record extract supporting the assertions.")

> [A] purchaser at a judicial sale will be excused from [the] requirement to pay interest upon the unpaid balance for the period between the time fixed for settlement and the date of actual settlement only when the delay stems from neglect on the part of the trustee; was caused by necessary appellate review of lower court determinations[;] or *was caused by the conduct of other persons beyond the power of the purchaser to control or ameliorate*.

*Donald*, 302 Md. at 477 (emphasis added; citations omitted).

At issue here is the third exception, for unavoidable delay caused by "the conduct of other persons[.]" *Id.* As in this case, many of the decisions comprising the Maryland jurisprudence on this exception involved a foreclosure sale made under a contract that allocates responsibility for post-sale interest and taxes to the purchaser and prohibits abatement. *See generally Zorzit*, 197 Md. App. at 106 ("the terms set forth in an advertisement of a foreclosure sale, unless modified by an announcement made at the sale, become the terms of the contract when the sale is ratified by the trial court"). Significantly, in all but one of these cases, the settlement delay was caused by a mortgagor or former owner, seeking to impede the foreclosure proceedings. *Cf. Baltrotsky*, 395 Md. at 481 (holding that former property owner's efforts to void the sale through filing "persistent and monotonous pleadings" was "conduct of other persons" for abatement purposes); *Zorzit*, 197 Md. App. at 108-09 (holding that former property owners' use of "legal process to delay the final ratification" for 77 days constituted "conduct of other persons" for abatement purposes). *See generally AMT Homes*, 228 Md. App. at 311 (citing *Baltrotsky* and *Zorzit* as examples of "former owners" whose conduct, as opposed to "the conduct of either party to the sale (or, for that matter, the court itself)," was the delaying behavior that "put the case into interest-abating territory").

9

*AMT Homes* is the only reported Maryland case involving settlement delay caused by judicial operations, rather than by another person interested in the foreclosure proceedings. We agree with the circuit court and the Substitute Trustees that in the circumstances presented by this case, our review is guided by that decision and rationale.

In *AMT Homes*, 228 Md. App. at 308-09, 312-13, this Court applied the principles articulated in *Donald* to a foreclosure settlement delayed by a backlogged court calendar, which prevented ratification within the 60-day period contemplated by Md. Rule 14-305.[4] We rejected the foreclosure purchaser's argument that interest accruing after that 60-day period should be abated under an exception for delay "due to no fault of the purchaser," instead concluding that the rule does not establish a presumptive period within which ratification should reasonably be expected to occur. *See id.* at 308, 312-13.

Of direct importance to this appeal, we held that the circuit court did not err or abuse its discretion in declining to abate the foreclosure purchaser's obligation to pay post-sale interest and taxes when doing so would shift that obligation to another party who also had no control over the court's calendar. *See id.* at 310-11. Considering both the consequences and the public policy of abating a foreclosure purchaser's interest and tax obligations based solely on the impact of court-related delay in ratification, Judge Nazarian explained for this Court why foreclosure purchasers should bear the risk of any delay in judicial review:

---

[4] As we explained in *AMT Homes*, 228 Md. App. at 312-13, this rule "requires that the [foreclosure] sale 'be ratified unless cause to the contrary is shown within thirty days after the date of notice'" reporting the sale, so "that 'the process of achieving final ratification after the foreclosure sale would have been accomplished . . . within the 60 days as contemplated by the rules.'" (Citation omitted.)

Foreclosures, and the ensuing sales, involve three parties in interest. First, of course, is the debtor, who owes an unpaid debt, both principal and interest, and holds title to the property. Second is the lender, who has the right to collect the debt and forecloses on the property as a remedy for the debtor's failure to pay. Third is the purchaser, who agrees to buy the property from the debtor through the foreclosure sale process. The debtor's and lender's rights and obligations vis-à-vis each other, including the debtor's obligation to pay interest and the lender's right to receive it, are set forth in the documents that memorialize the debt. *See, e.g., Anderson v. Burson*, 424 Md. 232, 235-36 (2011). The purchaser's rights are defined by the law governing foreclosures and the notices setting forth the terms of the foreclosure sale. *Simard v. White*, 383 Md. 257, 310 (2004).

Generally speaking, debtors owe interest to their lenders (and taxes to the government) up until the time of the sale, at which point the purchaser takes responsibility. Outside the context of foreclosures, the sale is consummated at settlement. In the foreclosure context, however, there is one additional step: the court still needs to ratify the sale, and the debt isn't cleared until after that occurs, even though the purchaser takes equitable title at the time of the sale. *And the possibility that court review might extend longer than sixty days is a risk that falls on the purchaser in a foreclosure sale.* As equitable owner of the property, the purchaser should bear the risk associated with judicial review. *See Donald*, 302 Md. at 469 (explaining that at the time of sale, the purchaser receives "an inchoate and equitable title which becomes complete by ratification of the Court."). *With the benefits of equitable ownership come its obligations, one of which is that the purchaser pays interest from the time of sale. See id*. at 468 ("It is a general rule as to sales under decrees of this Court, that the purchaser always pays interest, according to the terms of the decree, from the day of sale, whether he gets possession or not." (quoting *Brown v. Wallace,* 2 Bland 585, 594 (1830)). Whether or not it's fair—and reasonable people might disagree—*this allocation of costs and responsibilities is well-known and frames everyone's expectations. Purchasers know when they decide whether to bid at a sale that if they win, they will be on the hook for interest and taxes from that point forward.* Presumably, and especially frequent and sophisticated participants like AMT, purchasers calibrate their bids to reflect their prospective interest and tax liability. And although the term "abatement" suggests that the liability at issue here would disappear altogether, it doesn't—lenders will still be owed the unpaid interest and taxes, and will look to debtors (who would seem less able to pay) to recover.

*The question, then, is less about eliminating an unfair obligation than about deciding whether it should be shifted to another party.*

11

*Id.* at 309-10 (emphasis added; footnotes omitted).

This Court rejected the foreclosure purchaser's argument that the judicial delay warranted abatement under the equitable exception for delay "caused by the conduct of other persons beyond the power of the purchaser to control or ameliorate[,]" because "courts are *obliged* to provide relief to purchasers when ratification goes beyond a 'reasonable time,' which [those purchasers] define[d] as sixty days." *Id.* at 311 (citing *Donald*, 302 Md. at 477). In doing so, we also foreclosed treatment of the circuit court as an "other person" that should be accountable for such delay:

> *We decline to reallocate responsibility for interest and taxes when the delay results from judicial backlogs*, and especially to declare sixty days (or any other time period) as the presumptive point past which a delay is "reasonable." *AMT has not cited, and we have not found, any authority for the proposition that a court is a "person[ ] beyond the power of the purchaser to control or ameliorate."* And when courts have abated interest payments, those decisions have been grounded in the behavior of the former owners.

> \* \* \*

> AMT tries to shoehorn the court itself into the "conduct of other persons" exception by relying on case law recognizing the circuit court as the vendor of property in a judicial sale. *See Greentree Series V, Inc. v. Hofmeister*, 222 Md. App. 557, 566 (2015) (explaining that in a judicial sale, the court is the vendor, and the "contract of sale is a transaction between the court as vendor, and the purchaser . . ." (quoting *White v. Simard*, 152 Md. App. 229, 241 (2003), *aff'd* 383 Md. 257 (2004))). If the court is the true seller of the property, the argument goes, it may not impose upon the purchaser a cost that accrued because of its own delay.

> This argument fails, however, because the court's role in a foreclosure sale is fundamentally different than that of a private seller. While the court functions similarly to a private seller in many ways, *see id.* at 566-67 ("Before ratification the transaction is merely an offer to purchase which has not been accepted."), Title 14 of the Maryland Rules charges the court with a layer of oversight that a normal private seller wouldn't have. That is, the

court must hear any exceptions to the sale and may only ratify it if it decides the sale was fairly and properly made. Md. Rule 14-305(e). It was AMT's duty, as purchaser, to "assure the court that [it was] ready, willing and able to comply with the terms fixed for its completion." *Donald*, 302 Md. at 478. *AMT is not entitled to a reduction in the interest payments it promised to pay simply because the court exercised its oversight role over a longer-than-ideal period of time.*

*Certainly, AMT has the right to a timely decision, but it would not be appropriate for us to establish a rigid time limit . . . that imposes financial consequences on another party that also has no control over the delay.*

*Id*. at 311-12 (emphasis added). Instead, we concluded that "[t]he delay in the court's ability to consider the sale, although regrettable, falls within the universe of risks properly allocated to purchasers, and a cost of doing business in this space." *Id*. at 313.

Like the circuit court, we shall apply the rulings and reasoning articulated in *Donald* and *AMT Homes* to the record before us. Despite the novel circumstances presented by this case, where ratification was delayed by a judicial stay imposed during a public health emergency, we discern no legal or equitable reason to depart from these principles.

Although delay in judicial review caused by the "conduct of other persons" may warrant abatement in certain circumstances, this Foreclosure Purchaser expressly agreed in the Contract of Sale that interest would not be abated "for any reason, including but not limited to . . . Court administration of the foreclosure[.]" Similarly, the Foreclosure Purchaser expressly agreed that "[a]ll taxes . . . are to be adjusted to the date of auction, and thereafter are to be assumed by the purchaser." Based on the established precedent and policy articulated in *AMT Homes*, this contract language allocates the risk and responsibility for post-sale interest and taxes to the Foreclosure Purchaser, even if judicial

13

review were to be delayed because of court-related circumstances beyond the control of any party to the foreclosure proceedings.

We are not persuaded that the circuit court abused its discretion in failing to treat the novel circumstances surrounding the COVID-19 stay orders as an equitable basis for reallocating those responsibilities. Instead, we reaffirm that a foreclosure purchaser is not "entitled to a reduction in the interest payments it promised to pay simply because the court exercised its oversight role over a longer-than-ideal period of time." *Id*. at 312. As "is well-known and frames everyone's expectations[,]" based on both precedent and contract terms, the post-sale responsibility for interest and taxes belongs to the foreclosure purchaser, even when ratification and settlement is delayed because of temporary restrictions on court operations. *See id.* at 310-11. Whether caused by a court-specific backlog or by a judiciary-wide stay in response to a public emergency, such delay may be beyond the foreclosure purchaser's control, but it is not caused by the "conduct of other persons" so as to warrant abating the foreclosure purchaser's responsibility for interest and taxes. For the same reasons we held in *AMT Homes* that the court itself is not a "person[] beyond the power of the purchaser to control or ameliorate[,]" *id.* at 311, neither is the Chief Judge, acting in her capacity as the administrator of our Judiciary, a person whose conduct warranted abatement.

Consequently, we agree with the circuit court that the Chief Judge's orders staying pending foreclosure proceedings, from March 18 through July 25, 2020, do not constitute delay caused by the conduct of other persons affected by the foreclosure proceedings, which is the type of unavoidable delay contemplated by *Donald* and *AMT Homes*. In our

14

view, such delay in judicial review resulting from neutral conditions affecting judicial operations – whether caused by the court-wide backlog in *AMT Homes* or by the pandemic-related stay effective judiciary-wide in this case – does not warrant equitable relief from a foreclosure purchaser's contractual obligation to pay interest and taxes.

As the Foreclosure Purchaser admits, abating post-sale interest "would fully shift the additional costs from the foreclosure purchaser to the lender[,]" even though the lender also had "no control over the delay" and contracted away the risk of a court-related delay in judicial review. *See id.* at 312. Here, the Foreclosure Purchaser knew that it would owe more in interest if there was any court-related delay in ratification. The Foreclosure Purchaser weighed that fully disclosed risk, presumably aware that any increase in interest attributable to delayed ratification could be offset, in whole or in part, by an increase in the value of the Property during the period of delay.[5] That was a risk-reward bargain that "falls within the universe of risks properly allocated to purchasers, and a cost of doing business in this space." *Id*. at 313.

Likewise, with respect to abatement of taxes on the Property, we agree with the circuit court that there is no legal or factual justification for shifting responsibility from the

---

[5] In this instance, on February 25, 2020, with a deposit of $46,000, the Foreclosure Purchaser agreed to pay $222,000 for Property that was appreciating in value pending ratification on September 24, 2020. As the Substitute Trustees point out, the Property is reported as having been sold in January 2021 for $365,000. *See* https://www.realtor.com/realestateandhomes-detail/901-Park-Ter_Fort-Washington_MD_20744_M57480-61098 (last accessed Oct. 18, 2021). At the same time, the post-sale interest and tax costs on the Property totaled $6,560.14, according to the Court Auditor's account of an audit dated January 7, 2021, and ratified on January 22, 2021, showing $5,039.00 in post-sale interest and $1,521.14 in post-sale taxes.

Foreclosure Purchaser, who agreed to pay taxes on the Property from the sale date. *See id.* at 312-13. We have not been cited to any precedent reducing taxes based on the "conduct of other persons" exception. Applying the same principles governing abatement of post-sale interest, we decline to reallocate responsibility for post-sale taxes when the delay in ratification results from such judicial stay orders. *Cf. id.* at 311 ("We decline to reallocate responsibility for interest and taxes when the delay results from judicial backlogs").

For these reasons, the circuit court did not err or abuse its discretion in declining to abate the Foreclosure Purchaser's obligation to pay post-sale interest and taxes based on the temporary judicial stay on pending foreclosure proceedings during the COVID-19 public health emergency.

**JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**